## Case No. 15,422.

UNITED STATES v. HUMPHREYS et al.

[3 Hughes, 201; 7 Reporter, 330.] [1]

Circuit Court, E. D. Virginia. Feb. 11. 1879.

JUDGMENT LIENS—RECORDING.

In order to their being liens upon real estate in Virginia, judgments obtained in courts of the United States. in the state, need not be recorded.

In equity.

L. L. Lewis, U. S. Atty., and Henry T. Wickham, for the United States.

F. W. Christian, for defendants.

HUGHES. District Judge. The very able and informing briefs of counsel leave me nothing to do but state the points of the case, and deduce a decision from the authorities which govern it. The United States obtained a judgment in October, 1877, against Joseph M. Humphreys, late collector of customs at Richmond, and his sureties on his official bond. In January, 1878, Humphreys executed a deed of trust to secure money borrowed, through Thomas N. Page, on lands of his lying in the county of Henrico, near

---

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission. 7 Reporter, 330, contains only a partial report.]

the city of Richmond. The United States brings its bill in equity in this court against J. M. Humphreys and other proper parties defendant to subject this land to the lien of its judgment. And the single question in the case before the court is, whether the judgment is of higher dignity than the trust deed, and can be enforced as against the lien of the debt secured by that deed.

The contention of the trust creditor is that the United States lost its lien and the benefit of its priority in time over the deed by failing to docket its judgment in pursuance of the requirement of the eighth section of chapter 182 of the Code of Virginia, which provides that "no judgment shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it is docketed" in the county or corporation where the land lies, on the judgment docket required to be kept by the clerk of each county or corporation court of the state, either within sixty days next after the date of such judgment, or fifteen days before the conveyance of said estate to the purchaser.

I shall first consider the question as if the judgment creditor was a private creditor. The sixth section of the same chapter of the Code of Virginia provides that "every judgment for money rendered in this state heretofore or hereafter against any person shall be a lien on all real estate of such person." This provision was first embodied in the Code of 1849. Previously to that time, and, indeed, subsequently until March 26, 1872, the writ of elegit was in use in Virginia; but on that date that writ was finally abolished by special act of the legislature. Such being the law of Virginia as to the lien of judgments in the state courts, the next inquiry is, how does the law thus existing apply to judgments of courts of the United States rendered in the state of Virginia?

It is well-settled law that judgments rendered in the courts of the United States are liens upon the defendant's real estate in all cases where similar judgments of the state courts are made liens by the law of the state. Wood v. Chamberlain, 2 Black [67 U. S.] 430; more particularly page 438 et seq. Many other decisions of the supreme court of the United States might be cited to the same effect. These judgments are liens, not by virtue of the adoption of state laws by the United States courts, by rules of court or otherwise, but by virtue of acts of congress giving the same effect to final process of United States courts as is given by state laws to process of the courts of the states in which they are held; giving the same remedies on judgments and decrees of federal courts as are given by state laws on judgments and decrees of state courts; and giving authority to the United States courts to make proper rules for securing these objects. We are therefore to look to acts of congress on this subject to ascertain how far judgments of United States courts in Virginia are liens up-

on lands. If there had been no such act of assembly as that of March 26, 1872, abolishing the writ of elegit in Virginia, it might probably be contended that in Virginia the process act of congress of 1828 [4 Stat. 278], is not repealed by the act of congress of June 1, 1872 [17 Stat. 196], now section 916 of the Revised Statutes of the United States, and that the writ of elegit lies from the United States courts in this state; and that the lien of the writ of elegit is, unlike that given by section 6 of chapter 182 of the Code, not subject to the condition of docketing the judgment imposed by section 8 of that chapter. But the Virginia law of March, 1872, does abolish the elegit, and section 916 in the Revised Statutes, giving the same effect to, and remedies on, judgments of the United States courts as were then (1874) given by state law to judgments of state courts, repeals by substitution in Virginia the process act of 1828 as to the elegit, whatever it may do in other states, under the particular legislation of those states bearing upon this subject. Decisions of United States courts in other states, seemingly in conflict with this view, were rendered upon the condition of state legislation in those states, and do not necessarily apply to the condition of legislation in Virginia.

The judgment in this case against Humphreys became a lien upon his lands just as it would have become if it had been a judgment of a state court; and the remaining question is, whether by the execution of the deed of trust which Humphreys gave in January, 1878, the judgment "ceased" to be a lien under the operation of the 967th section of the Revised Statutes of the United States, which provides that judgments of United States courts within a state "shall cease to be liens on real estate, etc., in the same manner and at such periods as judgments of the courts of the state cease by law to be liens thereon." I do not doubt that so far as this law shall operate proprio vigore in any case —for instance, as a statute of limitations— the lien of a judgment of a United States court would cease just as that of a state court would do under a state statute of limitation; but I am precluded by a current of decisions rendered by courts of the United States from holding that the lien of a judgment of a United States court ceases in the event it is not docketed in accordance with a state law as against a subsequent purchaser without notice. I am precluded from holding that the lien of the judgment in this case ceased in January, 1878, as against the trustee's title under the deed of trust executed in that month by Humphreys. The decisions of the United States courts have been in nothing more uniform, unvarying, and consistent than in holding that where rights once attach under laws of congress adopting laws of the respective states, these rights are not divested by a non-compliance with conditions, restrictions, or limitations contained in those very state laws, where a compliance with the latter would depend upon a resort in any way to state officials, or to the machinery of the state judiciary.

The provision of the Code of Virginia making a judgment for money a lien upon the real estate of the debtor makes, in the eighth section of chapter 182, an exception in favor of a subsequent purchaser without notice, where the judgment has not been docketed. The process of docketing depends upon the action of an officer of a state court in keeping a docket, and upon that officer's actually docketing the judgment of the United States court when presented. There is no law of Virginia requiring this officer to docket the judgment of a United States court. He acts strictly in a ministerial capacity, and is not required by any express law to enter such a judgment when presented for such a purpose. Congress, on its part, has not (as I think it should do) by law required clerks of United States courts to keep such dockets in each district as the law of Virginia requires to be kept in each county. So as to other restrictions, exceptions, limitations, and conditions which state laws conferring rights insert in the laws conferring them. I think it may be laid down as a rule having few exceptions that in any case of a law of a state conferring rights upon conditions, or with exceptions, and adopted by congress as operative in that state, wherever the exceptions or conditions depend upon the action of state officers, so that the enjoyment of rights thus once conferred could be defeated or divested by the action, or refusal to act, of a state officer, such a condition, or exception, in the state law is uniformly held by the United States courts not to limit the rights conferred by the act of congress adopting the state law. This was decided in Palmer v. Allen, 7 Cranch [11 U. S.] 550-64; Wagram v. Southard, 10 Wheat. [23 U. S.] 1; U. S. Bank v. Halstead, Id. 51; Boyle v. Zacharie, 6 Pet. [31 U. S.] 648; and (more particularly in their bearing upon the question now under consideration) Massengill v. Downs, 7 How. [48 U. S.] 760; and Carroll v. Watkins [Case No. 2,457]. In these last cases the law of Mississippi, giving the lien in favor of judgments for money, was modified by provisions requiring judgments to be docketed, and making exceptions in favor of subsequent purchasers without notice as against judgments not docketed—provisions identical in purport with those of Virginia. But the supreme court of the United States held in the former case that in states where judgments create liens a judgment of a United States court has that operation throughout the judicial district in which it is rendered, and any provisions of state legislation modifying the lien of judgments and restricting their operation cannot affect the lien of a judgment of a United States court. I think the deci-

sion of the supreme court in Massengill v. Downs [supra], is decisive of the question under consideration, and requires me to decide that the judgment of this court rendered in October, 1877, is good against the trust-deed executed in January following, and that the lien created by section 916 of the Revised Statutes of the United States, adopting section 6 of chapter 182 of the Virginia Code, is not controlled or affected by section 8 of that chapter of the Virginia Code. This court has decided that a lis pendens in a United States court binds property in litigation, though not recorded and docketed, as required by state law if in a state court. Rutherglen v. Wolf [Case No. 12,175].

I do not think it necessary to go farther and inquire whether a judgment in favor of the United States has the same force as a judgment in favor of the state of Virginia in this state, and as a judgment in favor of the crown in England. i am inclined to believe on authority, and would so decide if necessary in this case, that judgments in favor of the United States stand on the same principle as those in favor of the commonwealth and of the crown: that they are a lien independently of laws making judgments generally a lien upon the estates of debtors, and do not depend upon those laws. Although the ancient writ in favor of the crown of extendi facias is obsolete by mere disuse, having given place to more efficient remedies, yet I imagine that it still lies theoretically; and its theoretical existence is sufficient to establish the liens in this country of judgments in favor of the state and federal governments. Their precedence over all liens in favor of private persons stands upon such broad maxims as "Salus populi suprema lex," "Thesaurus regis est pacis vinculum, et bellorum nervi," and the like. Certain prerogatives of the crown belong, in the United States, not only to the state governments, but to that in the United States. Those which belonged to the king in England as parens patriæ, as distinguished from those which belonged to his person, survive to the government of the United States in this country. Dollar Savings Bank v. U. S., 19 Wall. [86 U. S.] 239. This doctrine is well settled in respect to the state governments; more particularly by Com. v. McGowan, 4 Bibb, 62; Leake v. Ferguson, 2 Grat. 436; and Com. v. Baldwin. 1 Watts. 54. Authorities might be multiplied if it were necessary. It might not be necessary, in respect to recent judgments in favor of the United States, to resort to a bill in chancery for the enforcement of them upon real estate. But where they have been standing for any length of time, and junior liens have supervened, I think the proper method of proceeding is the same as would be proper in respect to judgments in favor of citizens,—that is to say, by bill,—and that such a course has been properly taken in this case.