EDWIN F. BABBAGE Appellant, *v*. DANIEL W. POWERS, Respondent.

While the public is entitled to have a street or highway remain in the condition in which it placed it, and whoever, without special authority, materially obstructs it or renders its use hazardous by doing anything upon, above or below the surface, is guilty of a nuisance, when it appears that the act was done with the consent of the proper officials, the rule of liability is relaxed and rests upon and is limited by the ordinary principles governing actions of negligence.

One who receives a license to encroach upon a public street is held to an implied agreement to perform the act permitted with due care for the safety of the public.

The license, however, relieves him from the imputation of trespassing in doing the act consented to and places him simply in the position of one liable for negligence in case of omission to perform such duty.

Where a vault had been constructed, with knowledge of the city officials, under the sidewalk of a city street, in front of a block erected and used for business purposes, and had been used for nine years, *held*, consent to its construction was to be inferred from the acquiescence of the city officials having charge of the street and power to give such consent.

In the absence of a statute regulating the subject, a written consent in such case is not requisite; a verbal one is sufficient.

In an action to recover damages for injuries received by plaintiff from falling through into a vault constructed under the sidewalk in front of a block of stores belonging to plaintiff in the city of R., the following facts appeared: The vault was covered with flagstones forming the sidewalk; one of these gave way as plaintiff, a heavy man, stepped upon it, and he fell through into the vault. It was not shown when this flag was broken, or whether it was defective. No negligence on the part of defendant or his grantor in constructing or maintaining the sidewalk was claimed further than was inferable from the accident itself. The vault was so constructed under the sidewalk with full knowledge upon the part of the proper city officials and in accordance with the common custom in the erection of business blocks in the city, and had been in use over nine years. *Held*, that plaintiff was properly nonsuited; that consent to the construction of the vault was to be inferred, and that, therefore, defendant could not be made liable as a trespasser, and no negligence on his part was proved.

(Argued October 6, 1891; decided December 8, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order

made the first Tuesday of October, 1889, which denied a motion of the plaintiff for a new trial and directed judgment for defendant on a nonsuit granted at Circuit.

Action to recover damages for a personal injury to the plaintiff caused, as alleged, by a nuisance maintained by the defendant in a public street.

The complaint alleged that on the 7th of November, 1885, the defendant being the owner, and, through his tenant, in possession of certain premises situate on State street in the city of Rochester, " without authority of law or permission from the municipal authorities of said city," maintained and continued under the sidewalk immediately in front of said premises " a certain vault excavated under said sidewalk * * * covered only by the stone flagging used by the public for passing and repassing;" that said stone flagging " was insufficient and inadequate in strength, through deficiency in quality or thickness, or by reason of some other defect to the plaintiff unknown, to sustain the ordinary travel of the public;" that by reason of such insufficiency and by the sudden breaking of one of the flagstones upon which the plaintiff was standing, he fell into the vault and sustained serious injuries.

The defendant, by his answer, denied certain allegations of the complaint, admitted that he owned the premises therein mentioned, but alleged that he did not own to the center of the street, nor beyond its outer line. He further alleged that said excavation was made, and the flagging over the same was laid, with the consent of the proper authorities, before he became the owner of the building; that the area and flagging were well and sufficiently made and maintained; that he had no knowledge or notice of any imperfection therein, and that the accident happened without any negligence or default on his part.

Upon the trial it appeared that the plaintiff was injured in front of a building known as the Ashley Block, consisting of three stores, erected in 1876. A vault, ten or twelve feet deep, excavated at the same time in front of each store, was walled up on three sides in a substantial manner and connected

on the fourth by an archway opening into the cellar of the store. Each vault was covered with flagstones, supported by solid iron girders running lengthwise of the sidewalk and resting on the walls. In the sidewalk were three openings, closed by iron doors, one in front of each store, for the purpose of raising and lowering goods. The sidewalk was ten or twelve feet wide, with three rows of flagstones. After the covered area was thus constructed, and in 1883 or 1884, the defendant purchased said block, and has owned it ever since. At the date of the purchase, the store in question was rented to one Harris, who thereupon attorned to the defendant, and he has since occupied the store under renewals of the lease. November 7, 1885, the plaintiff, a man weighing 235 pounds, was walking with a friend in front of said store, and, meeting some ladies, turned toward the west, while his friend turned to the east, to allow them to pass. In thus turning out, the plaintiff stepped on a flagstone next to the curb and thereupon fell into the vault underneath, the stone, in two pieces, one a little longer than the other, falling with him, and he was seriously injured. Said stone was from two to two and one-half feet wide by four or five feet long and four or five inches thick. It did not appear when or how it was broken, nor whether it was defective in any respect, nor was the cause of the accident shown, except as thus stated. The plaintiff, who had an office and lodging-rooms next door to the Ashley Block, and had for years passed over the walk, testified that at the time of the accident it "was apparently just as he had always seen it." It did not appear expressly that the defendant had ever seen said block, or that he knew or had heard of the existence of said excavation. The evidence, from which it is claimed that notice of its existence should be inferred, is the purchase of the block by him; the receipt of rent therefor through his clerk; the renewal of the Harris lease by him in person, and his presence on one occasion in the city of Rochester, where a witness met him "as he was coming out of his bank." It was admitted that "no evidence was given of any negligence on the part of the defendant, or of his grantor, in constructing or maintain-

ing the flagging which gave way, any further than such negligence is inferable from the accident itself."

*Theodore Bacon* for appellant.  The excavation under the highway, into which the plaintiff fell, was a common and public nuisance; or, strictly and properly, a *perpresture.* (2 Story's Eq. Juris. §§ 921, 922; *Irvine* v. *Wood,* 51 N. Y. 224; *Dygert* v. *Schenck,* 23 Wend. 446; *Congreve* v. *Smith,* 18 N. Y. 79; *Anderson* v. *Dickie,* 1 Robt. 238; *Whalen* v. *Gloucester,* 4 Hun, 24; *Conklin* v. *Phœnix Mills,* 62 Barb. 299; *Hotel Association* v. *Walters,* 23 Neb. 280; Dillon on Mun. Corp. §§ 1032, 1033; *Clifford* v. *Dam,* 81 N. Y. 52; *Wolf* v. *Kilpatrick,* 101 id. 146.)  This defendant, although he did not originally construct · the vault which on the evening in question was shown to be a nuisance, nevertheless is liable as one who "maintained" or "continued" it. (*Irvine* v. *Wood,* 51 N. Y. 224; *Davenport* v. *Ruckman,* 10 Bosw. 20; *King* v. *Peddy,* 1 Ad. & El. 822; *Clark* v. *Fry,* 8 Ohio St. 359; *Bush* v. *Steinman,* 1 B. & P. 404; *Gandy* v. *Jubber,* 5 B. & S. 78, 485; 9 id. 15; *Dalay* v. *Savage,* 145 Mass. 38; *Sanford* v. *Clark,* 59 L. T. Rep. [N. S.] 226.) If license from the city authorities can be inferred, no license at all events can reasonably be assumed but one which imposes the condition of protecting the public from injury.  (*Mairs* v. *M. R. E. Assn.,* 89 N. Y. 498.)

*Albert H. Harris* for respondent.  The area was not a nuisance *per se.*  (*Jennings* v. *Van Schaick,* 108 N. Y. 530; *City of Chicago* v. *Robbins,* 71 U. S. 657; *Dygert* v. *Schenck,* 23 Wend. 445; *Bond* v. *Smith,* 113 N. Y. 378; *Congreve* v. *Morgan,* 18 id. 84; *Fisher* v. *Thirkell,* 21 Mich. 1.)  The evidence shows that the defendant is not liable.  (*Clancy* v. *Byrne,* 56 N. Y. 129; *Wenzlick* v. *McCotter,* 87 id. 122; *Wolf* v. *Kilpatrick,* 101 id. 146; *Ahern* v. *Steele,* 115 id. 203.)  Mr. Powers' title extended only to the east line of State street, and he was not the owner of the area.  (*Harris* v. *Elliott,* 10 Pet. 25; *Jackson* v. *Hathaway,* 15 Johns. 447; *Tyler* v.

*Hammond*, 28 Mass. 193, 212; *Woodhull* v. *Rosenthal*, 61 N. Y. 382; *Root* v. *Wadhams*, 107 id. 394.) The duty of keeping this area safe and in repair rested upon the occupant and not upon the defendant. (*Swords* v. *Edgar*, 59 N. Y. 28, 33; *Pretty* v. *Bickmore*, L. R. [8 C. P.] 401; *Kirby* v. *Boylston Market*, 80 Mass. 249; *City of Lowell* v. *Spaulding*, 58 id. 277; *Shipley* v. *Associates*, 101 id. 251.) If this area properly cared for and repaired would not become a nuisance, the defendant is not liable. (*Swords* v. *Edgar*, 59 N. Y. 28.) If this area was originally a nuisance, having bought the property with the area existing upon it, the defendant is not responsible to the plaintiff, unless notice to him of the existence of the nuisance is shown. (*C. S. Road* v. *B., N. Y. & E. R. R. Co.*, 51 N. Y. 573; *Bond* v. *Smith*, 44 Hun, 219; *Haggerty* v. *Thompson*, 45 id. 398; *Nichols* v. *Boston*, 98 Mass. 39.) The plaintiff's objections to the testimony received to the effect that such areas as this were common throughout the city, were properly overruled. (*Raymond* v. *City of Lowell*, 60 Mass. 524; *Packard* v. *New Bedford*. 91 id. 202.)

VANN, J. The plaintiff does not claim that the defendant was negligent, but seeks to make him liable as a trespasser, upon the ground that the covered excavation in the street had never been authorized or consented to by the municipal authorities.

The law holds those who impair the safety of a public street to a strict liability. Thus in *Congreve* v. *Smith* (18 N. Y. 79), it was said that " persons who, without special authority, make or continue a covered excavation in a public street or highway, for a private purpose, should be responsible for all injuries to individuals resulting from the street or highway being thereby less safe for its appropriate use. * * * The general doctrine is that the public are entitled to the street or highway in the condition in which they placed it, and whoever, without special authority, materially obstructs it, or renders its use hazardous by doing anything upon, above or below the surface, is guilty of a nuisance. * * * No

question of negligence can arise, the act being wrongful.
\* \* \* There can be no difference in regard to the nature
of the act or the rule of liability, whether the fee of the land
within the limits of the easement is in a municipal corpora-
tion, or in him by whom the act complained of was done."
In another case, arising out of the same accident, it was held
that even if the stone covering the excavation was broken,
after it was laid, by the wrongful act of others, the defendants
would still be liable, because they were bound at their peril
to keep the area covered in such a manner that it would be as
safe as if it had not been built. (*Congreve* v. *Morgan,* 18 N.
Y. 84.) These cases have been followed and made the basis of
judgment in many others. (*Creed* v. *Hartmann,* 29 N. Y.
591; *Irvine* v. *Wood,* 51 id. 224; *Whalen* v. *Gloucester,*
4 Hun, 24; *Anderson* v. *Dickie,* 26 How. Pr. 105; *Wendell*
v. *Mayor, etc.,* 39 Barb. 329; *S. C.,* 4 Keyes, 261.) Although
called to the attention of the court, they seem to have been
disregarded in *McCarthy* v. *City of Syracuse* (46 N. Y. 194,
199), where it was said: "The excavation by the plaintiffs of
the area under the sidewalk was not unlawful. They owned
to the center of the street, subject to the right of way of the
public over the surface. For any interference with this right
of way the plaintiffs would have been responsible, but so long
as they did no injury to the street, they were at liberty to use
the space under it, as they might any other part of their
property." Assuming, however, the rule to be as stated in the
*Congreve* cases (*supra*), when the excavation is made without
authority (*Clifford* v. *Dam,* 81 N. Y. 52, 56), it is clear that
when it is made with the consent of the proper municipal
officers, the rule of liability relaxes its severity and rests upon
the ordinary principles governing actions of negligence. The
person receiving the license is held to impliedly agree to per-
form the act permitted with due care for the safety of the
public, and is made liable for any violation of duty in this
regard. (*Village of Port Jarvis* v. *First National Bank,*
96 N. Y. 550, 556; *Clifford* v. *Dam,* 81 id. 52; *Dickinson*
v. *Mayor, etc.,* 92 id. 584, 587; *Village of Seneca Falls* v.

*Zalinski*, 8 Hun, 571, 574; *Newton* v. *Ellis*, 85 Eng. C. L. 123.)

When conditions, whether express or implied, are annexed to the license, substantial compliance therewith is essential to the protection of the licensee, but consent and compliance relieve the owner from the imputation of trespassing in doing the act consented to, and place him in the position of one liable for negligence only. (*Wolf* v. *Kilpatrick*, 101 N. Y. 146; *Nolan* v. *King*, 97 id. 565; Elliot on Roads & Streets, p. 541.)

It did not appear on the trial of this action that express authority had been given by the city of Rochester, or in its behalf, either to the defendant or his grantor, to construct or maintain the covered area in question. On the contrary, a witness called by the plaintiff testified that during and prior to the year 1876, he was a member, and the clerk, of the board of public works, which had charge of "public matters, streets, walks and such things," and the members of which were commissioners of highways; that such board expired in April or May of that year, and was succeeded by the executive board, possessing similar powers, and that he was also clerk of that board; that upon examining the records of both boards kept by him for the year 1876, "and about that time," he did not find that any written permission had been given by either of those bodies "to excavate and construct a vault under the sidewalk in front of the premises known as the Ashley Block;" and that at this time "the common council did not exercise jurisdiction over such subjects." On the cross-examination of this witness, however, it appeared that while he was a member of one or the other of said boards he observed the work of constructing the Ashley Block as it was going on; that in 1876 and for some years prior, it was the common practice to make excavations, such as that in question, under the sidewalks, to cover them with flagstones and to make openings therein as means of access thereto and to the cellars of stores; that this was very common on State street in the neighborhood of the Ashley Block; that one Thompson, who as contractor built the vault in front of that block, was at the time a member of the board

of public works; that another member did business a little below said block, and other members in the same locality, and that all of the members were accustomed to go about the city for the purpose, as it is assumed, of inspecting the streets and sidewalks.  It appeared from other testimony that State street was a business street, and that covered excavations such as the one under consideration, were common all over the city. There was no evidence of any objection on the part of the city or its officers.

At the close of the evidence, a motion to nonsuit was made and granted upon the ground, among others, that the plaintiff had failed to make out a cause of action against the defendant. No request to submit any question to the jury was made by the counsel for the plaintiff, who contented himself with an exception to the decision of the court in granting the motion.

The foregoing facts, which were undisputed, were deemed sufficient by the courts below to justify the nonsuit upon the ground, as stated by the learned General Term, that " while it does not appear by positive proof that the owner obtained a license or permit from the municipal authorities to excavate the space under the sidewalk, such authority may reasonably be inferred from the use of the same for the period of nine years, without objection, with actual knowledge on the part of the city officials that the same existed."

The question presented for our determination, therefore, is whether consent to the maintenance of this vault may be inferred from the long acquiescence of the municipal authorities, under the circumstances stated ?

A similar question was under consideration by this court in the case of *Jennings* v. *Van Schaick* (108 N. Y. 530), where the plaintiff fell through an uncovered and unguarded coal-hole in the sidewalk.  Although the building was rented in flats or apartments to tenants who used the coal-hole, the owner was held liable because he remained in control of the halls and a part of the basement, and employed a janitor to take care of the premises, who, in the discharge of his duty as such, controlled the coal-vault and the opening thereto in the sidewalk,

and through his negligence in leaving the hole unguarded, the accident happened.   The court in discussing an exception to the charge of the court that the action was based on a wrongful act, said : " It does not appear that the defendant, who owned the premises, had ever obtained from the municipal authorities any formal license or permission to construct the opening in the sidewalk, but such authority was a reasonable inference from an acquiescence of eighteen years without objection from the city.   Assuming, however, that authority for the construction had been granted, the duty of safe covering and of protection when open remained, and if not performed, the unguarded opening became at once a wrong and a nuisance. *   *   *   We have assumed that, from long use and acquiescence, the consent of the municipal authorities to the construction of the coal-vault and its aperture should be inferred, and so the structure was not, in and of itself, a nuisance.   But the consent of the city is conditional upon certain modes of use, and if the opening is left unguarded it becomes at once a trap and a nuisance."

Thus, while the court held the owner liable on the ground of negligence, it also held that he was not liable as an original trespasser, because it inferred from the acquiescence of the municipal officers that they had consented to the construction and maintenance of the covered area.   The question was presented to the Supreme Court of the United States in *Chicago City* v. *Robbins* (2 Black, 418, 425), and also in *Robbins* v. *Chicago City* (4 Wall. 657, 679), where it was held that permission to build and maintain an area in a public sidewalk might be inferred from the fact of its construction and maintenance without objection from the officers of the city.   So, it has been held, that the deposit of building materials in a street for use in the erection of a house, with the full knowledge of the superintendent and trustees of the village, is sufficient to authorize and even compel a jury to find consent by implication to such use of the street. (*Village of Seneca Falls* v. *Zalinski*, 8 Hun, 571, 573.)

The Supreme Court of Massachusetts in laying down a

similar rule, said : " What may be deemed a reasonable and proper use of a way, public or private, must depend much on the local situation and much on public usage. The general use and the acquiescence of the public is evidence of the right. The owner may make such a reasonable use of a way adjoining his land as is usually made by others similarly situated. As to the reasonableness of the use it may well be laid down 'that in a populous town where land is very valuable, when the owner of a lot has occasion to build, and for that purpose to dig cellars, he may rightfully lay his building material and earth within the limit of the streets, provided he takes care not to improperly obstruct the same, and to remove them in a reasonable time." (*Van O'Linda* v. *Lothrop*, 21 Pick. 292, 297.)

The Supreme Court of Michigan holds that excavations properly and safely constructed under the public streets of cities for the convenience of the owners of premises adjoining are not unlawful, even in the absence of permission from the municipal authorities. (*Fisher* v. *Thirkell*, 21 Mich. 1, 21.)

In Illinois, the rule, as laid down by its Supreme Court, is that where the corporate authorities of a city have knowledge of the fact that a lot owner is constructing a vault under the sidewalk for his own convenience, and make no objection, authority to construct the same may be inferred, and when the same is continued for many years without objection, the acquiescence on the part of the city will be regarded as sufficient authority to construct and maintain it in a careful and prudent manner. (*Gridley* v. *City of Bloomington*, 68 Ill. 47, 50.) In an earlier case involving the same question, that learned court said : " We are not prepared to admit that the defendant could, by reason of his ownership of the adjoining property, claim the absolute right to take up the sidewalk and extend his coal cellar under it, but as such a privilege is of great convenience in a city, and may, with proper care be exercised with little or no inconvenience to the public, we think that authority to make such cellars may be implied in the absence of any action of the corporate authorities to the contrary, they having been aware of the progress of the work." (*Nelson* v.

*Godfrey*, 12 Ill. 20, 23.)   See also *Clark* v. *Fry* (8 Ohio St. 358); *Wood* v. *Mears* (12 Ind. 515); *Mallory* v. *Griffey* (85 Pa. St. 275); *Hundhausen* v. *Bond* (36 Wis. 1); *Irvin* v. *Fowler* (5 Rob. 482); Dillon on Mun. Corp. vol. 2, §§ 699, 700 ; Cooley on Torts, 748.   We have been referred to no case, and have found none, criticising or condemning the doctrine of implied consent as thus laid down by the courts.

The giving of consent is an executive act, which from its nature does not require an ordinance or resolution, as in the case of a legislative act, or a written entry or decision, as in the case of a judicial act.   Where the power resides in a single officer, and there is no statute regulating the subject, no reason is apparent why his verbal consent would not suffice, the same as a verbal license from an adjoining owner to his next neighbor, to construct on the land of the latter a wall or anything which, without consent, would be a trespass. (*Miller* . v. *Auburn, etc., R. R. Co.*, 6 Hill, 61 ; *Murray* v. *Gibson*, 21 Ill. App. 488; 13 Am. & Eng. Ency. 546.)   So consent by a board might be given orally by the assembled body when inspecting the premises.   An individual proprietor, standing by and witnessing an erection on his land by the adjoining owner, which would be a trespass if not consented to, by not objecting, impliedly consents.   Why should not actual knowledge by city officers, having the power to give consent, and their persistent acquiescence for year after year, both before and after the premises had changed owners, in the maintenance of said vault, be given the effect of actual consent thereto ?   In answering this question due consideration should be given to the convenience of commerce and the necessities of business in crowded cities.   Due regard should also be had to the custom with reference to constructing vaults under sidewalks, so universal in the erection of modern buildings for business purposes in the cities of this state, that the court may take judicial notice of the fact, as a matter of constant observation and common knowledge. (*Gibson* v. *Stevens*, 8 How. [U. S.] 384, 399; *Raymond* v. *City of Lowell*, 6 Cush. 524, 534; Wade's Law of Notice [2d ed.], §§ 1408, 1410, 1417.)

We think that both upon principle and authority consent to an act so common and necessary as the construction of a vault under the sidewalk in front of a block erected and used for business purposes, must be conclusively inferred from the acquiescence of those having charge of the street for the public for so long a period as nine years.

The judgment should be affirmed, with costs.

All concur, except BRADLEY and PARKER, JJ., not voting. Judgment affirmed.