(74 App. Div. 234.)
### DESHONG v. CITY OF NEW YORK.
(Supreme Court, Appellate Division, First Department.　July 8, 1902.)

1. VAULT IN STREET—PERMIT—PRESUMPTION.

Any presumption of a permit from construction of a vault into a street, when the ordinances permitted it only on a written permit after a written application, is overcome by the records of the departments authorized to issue permits failing to show such permit.

2. SAME—REVOCABLE LICENSE.

One, by constructing a vault into a street, and maintaining it without a permit, when ordinances require one, acquires, against the public, only a revocable license.

3. VOLUNTARY PAYMENT—PERMIT FOR VAULT IN STREET.

Payment of the required fee for a permit to construct a vault from a building into a street, though accompanied by a protest, is voluntary, so that it cannot be recovered, being made merely so that the construction may be immediately proceeded with.

Patterson and Laughlin, JJ., dissenting.

Appeal from trial term.

Action by Maurice W. Deshong against the city of New York. From judgment for defendant after trial without a jury, plaintiff appeals. · Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles G. Cronin, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J.　The plaintiff was the owner of two old buildings, 54 and 56 West Third street, in the city of New York, and in January, 1898, tore down these buildings, and constructed a new building upon the same site.　When these buildings were torn down, there was a vault under the sidewalk in front of the buildings, and extending from the building line about three feet beyond the curb.　There was evidence to show that this vault had existed from the year 1876, and that from some time between 1860 and 1870 there had been a small vault under the sidewalk, used for coal.　After the plaintiff commenced the reconstruction of the building, he commenced to rebuild the vault, constructing new walls inside of the old walls, and putting in iron beams, when the public authorities interfered, and refused to allow the plaintiff to proceed until he had a permit from the city.　The superintendent of highways decided that the plaintiff had to take out a permit for the vault, and pay the city for its use the sum of $914.　The plaintiff then paid to the commissioner of highways that sum, making some sort of a protest against being compelled to pay, and brought this action to recover back the money thus paid.　Upon the trial, judgment was directed for the defendant, and from this judgment the plaintiff appeals.

The plaintiff testified that he paid this money "under actual compulsion and duress, and in order to immediately proceed with the construction of a certain building upon said premises then in process of construction"; that when he paid this money he was anxious to get the building finished, and knew he could not do so without pay-

ing the money. On behalf of the defendant it was proved by the officer in charge of permits for the construction of vaults that he had had exclusive charge of the issuing of such permits since the year 1880, and also had the public records relating to such permits since May, 1857, when permits of this character seem to have been first issued; that there is no record of the issuing of any permit for this vault since May, 1857, and since 1880 no permit had been issued for this vault to the knowledge of the witness. These records cover the period during which the plaintiff was able to prove that any vault in front of these buildings had been in existence, and is certainly sufficient to overcome a presumption that a permit had been issued for the construction of this vault. The first legislative permission for the use of the public streets in the city of New York for vaults seems to be chapter 446 of the Laws of 1857, by which the former charter of the city of New York was then amended. Section 24 of that act provides for an executive department of the city called the "Croton Aqueduct Board," which was given charge of issuing permits for street vaults, and the records of this department which commenced in April or May, 1857, show that no permit was issued by that department. The Croton aqueduct board had charge of this subject until the charter of 1870 (chapter 137, Laws 1870) was adopted. That act gave to the common council power to make ordinances in relation to the construction, repairs, and use of vaults, cisterns, areas, hydrants, pumps, and sewers. Section 21, subd. 20. By section 77 of that act the department of public works was given the power theretofore vested in the Croton aqueduct board. By the Revised Ordinances of 1859, which were introduced in evidence, it was provided that no person should cause or procure any vault or cistern to be constructed or made in any of the streets of the city of New York without the written permission of the Croton aqueduct board, and that every application for permission to erect such vault or cistern should be in writing, signed by the person making the same. By the Revised Ordinances of 1880 (section 181) it provided that "the commissioner of public works on application for that purpose is empowered to give permission to construct any vaults or cisterns in the streets," and by section 182 "no person shall cause or procure any vault or cistern to be constructed or made in any of the streets of the city of New York without the written permission of the commissioner of public works." By section 183 it is provided that "every application for permission to erect such vault or cistern shall be in writing, signed by the person making the same," and this ordinance has been continued in force to the present time. It cannot be doubted but that, under these provisions, from the year 1857 to the present time, no vault could be legally constructed in the streets of the city of New York without the written consent of the Croton aqueduct board or of the department of public works, based upon a written application; and the evidence is sufficient to show that no such application was made or permit granted from 1857 down to the time when the permit was obtained by the plaintiff. There was no officer authorized under these provisions of the statute and ordinances to verbally consent to the erection or mainte-

nance of such a vault. It is too well settled to need the citation of authorities that no person can obtain a right against the public to use a public street by prescription. There is certainly nothing to show, and there can be no presumption, that the plaintiff or his predecessor in title acquired anything more than a mere license to maintain this vault, which was revocable by the public authorities; and, while there would be a presumption, as between persons using a street and a person maintaining such a vault, that such permission had been given, so that it would not be a public nuisance, there is certainly no presumption that the public would be estopped from at any time resuming the possession of the street, and compelling the owner of property to remove the vault. In the absence of evidence that a permit had been obtained from the city or the public officers having charge of the streets, or that any consideration had been paid to the city for the use of this vault, no contract would be presumed which would estop the public from resuming the use of the streets at any time; and it could not be presumed that the owner of this property had acquired the right to reconstruct the vault and continue to use it forever without compensation to the city.

The cases relied on by the plaintiff (Babbage v. Powers, 130 N. Y. 292, 29 N. E. 132, 14 L. R. A. 398, and Jorgensen v. Squires, 144 N. Y. 282, 39 N. E. 373) were actions brought to recover for personal injuries from persons maintaining such vaults, and it was held that, as between the parties to the action, the permission to maintain the vaults had been acquired from the public authorities was to be presumed, so that the maintenance of such vaults was not a public nuisance. The principle established in these cases has no application to the right of the municipal corporation or the public authorities to require a person occupying a vault under such an implied permission to remove the encroachment. The license thus implied would be revocable by the municipal authorities. Crosdale v. Lanigan, 129 N. Y. 604, 29 N. E. 824, 26 Am. St. Rep. 551. In Babbage v. Powers the license implied is likened to a verbal license from an adjoining owner to his next neighbor to construct on the land of the latter a wall or anything which, without consent, would be a trespass. People v. Collis, 17 App. Div. 448, 45 N. Y. Supp. 282, was an application for a mandamus to compel the commissioner of public works to issue a permit to the relator authorizing him to take up the covering over a vault in front of his premises for the purpose of repairing such covering. The commissioner refused to issue such permit unless the applicant would pay for the permit at the rate of $2 per superficial foot. It was held that the relator was entitled to such permit; that whatever discretion the commissioner had in the premises had been exercised, and his decision to grant the permit has been made, but he withheld it because he thought the law made it his duty to exact a fee; that such a proceeding, however, was not a proper action or proceeding to contest the right of the relator to maintain or continue the vault under the street; and that, if the commissioner wished to contest such right of the relator, he should have done so in a proper action or proceeding. There was not presented in that case the question as to the right

of the relator to maintain the vault or to reconstruct it without obtaining a permit from the city and paying the amount required by the ordinances to be paid therefor.

We also think that the payment for the license from the city was voluntary, and that, under the circumstances, the plaintiff could not maintain an action to recover back the money paid.

It follows that the judgment should be affirmed, with costs. All · concur except PATTERSON and LAUGHLIN, JJ., who dissent.