## SANFORD v. WHITE.

### (Circuit Court, S. D. New York. October 10, 1904.)

1. JUDGMENTS—SETTING ASIDE IN EQUITY—GROUNDS OF JURISDICTION.

A court of equity has power, and it is its duty, to set aside a judgment obtained through fraud, accident, or mistake, and to award a new trial, where the defeated party has no remedy at law.

2. SAME—FRAUD AND COLLUSION OF ATTORNEY.

The action of the attorney for a plaintiff, in an action to recover damages for a personal injury alleged to have resulted from an unauthorized and dangerous obstruction placed in a street by the defendant, in refusing to call a material witness, and in stipulating certain facts which virtually defeated his client's right of action, and in declining to have present at the trial counsel acquainted with the facts, who had been employed by his client to aid in the trial, and who was able and willing to be present, *held* such evidence of fraud and collusion as to entitle the plaintiff to relief in equity by setting aside the judgment rendered in favor of defendant on the verdict of the jury and awarding a new trial.

In Equity. Bill to set aside a judgment entered on the verdict of a jury in favor of the defendant, James G. White, in an action at law in this court brought by the complainant, Peleg A. Sanford, to recover damages for injuries sustained by him by reason of coming in contact with an obstruction placed in a public street by said White, and which obstruction is claimed to have been unauthorized and to have constituted a nuisance. The complainant here alleges that such verdict and judgment was the result of the fraud and collusive conduct of his attorney in that action.

Sheldon & Gwynn (Samuel Norris, Jr., of counsel), for complainant.
Sheehan & Collin (Thos. L. Hughes and Chas. C. Clark, of counsel), for defendant.

RAY, District Judge. On the 3d day of December, 1891, in the city of Pawtucket, state of Rhode Island, the defendant, White, as contractor or subcontractor, was engaged in the construction of an electrical car line on Lonsdale and Mineral Spring avenues, public streets of said city, at or near their intersection. The construction of this car line had been authorized by the proper authorities, but the manner and means of doing the work were not specified. In doing the work the defendant stretched a guy rope wholly or partly across both avenues, drawn taut and fastened at both ends, in such a manner and at such a height and angle at one end that travelers in vehicles, passing along such avenues, in the·traveled part thereof, were liable to be caught by such rope and thrown from their vehicle and injured. This rope, so drawn and fastened, was left by the defendant after dark entirely unguarded and unlighted, so that travelers upon these avenues had no notice or warning of this dangerous obstruction to travel in these public streets of the city of Pawtucket. These avenues were not closed to public travel, and no notice in any form was given that they were unsafe or obstructed. In the evening of the day in question, and after dark, the complainant, with his son, was lawfully passing along Lonsdale avenue, as he claims, in a vehicle drawn by a horse, when without warning and without fault on his part, or that of his son, he

was caught under the chin by this rope, thrown violently to the ground, and, it is claimed, seriously and permanently injured.

The complainant brought suit against the city of Pawtucket, but was defeated on the ground that by reason of its relations to the railroad company and the contractor it (the city) was not liable; that the contractor or railroad company was the one to respond. Action was then brought in the Circuit Court of the Southern District of New York, on the law side, by the complainant, against said White and others, to recover the damages alleged to have been sustained on the occasion in question. That action, commenced in October, 1897, was not tried until February 7, 1900. The complainant's attorney of record, Mr. T———, resided in the city of New York; but the complainant had employed counsel, one Mr. J———, familiar with all the facts, residing in the state of Rhode Island near the scene of the accident. The complainant had a disinterested witness by whom he could have proved the facts that this rope was stretched across Lonsdale avenue south of its intersection with Mineral Spring avenue, and at such a height and angle that persons riding along that avenue on its westerly side would come in contact with it, and that same at the time of the accident in question, and after dark, was left unlighted and unguarded by the defendant, and that the street was not closed. This witness would also have testified to the accident, and to the fact that this complainant, after dark, about 5 p. m., came in contact with the rope and was thrown from his wagon and injured. It was an undisputed fact that no work was being done at the time the plaintiff was injured, work having ceased for the day, and that this rope had been placed there at about 2 o'clock p. m. of the day in question. At least, the complainant had a witness to prove those facts, who was not called; Mr. T——— insisting it was not material or necessary evidence. Clearly it was unnecessary to leave the rope in that place and position during the night. But the defendant was in the streets constructing the railroad with the consent of the proper authorities. This fact is not questioned.

It seems to be conceded by the defendant that if the guy rope was fastened in and across Lonsdale avenue south of the intersection of the avenues, and complainant was caught and injured there, the obstruction was unauthorized, and constituted a nuisance, and that the complainant might recover. But there was a conflict of evidence as to the location of the rope, and as to the point where the accident occurred, and the question was submitted to the jury, who found in favor of the defendant. Prior to the trial the following stipulation was entered into and signed by the attorneys for the respective parties:

"Whereas, the plaintiff in the above-entitled action complains of an injury which he received on the 3d day of December, 1891, on Lonsdale and Mineral Spring avenue, in the town of Pawtucket, Rhode Island, by reason of a certain guy rope, tower, and other appliances being placed in said avenues; and whereas, the parties hereto desire to facilitate the proof that such guy rope, tower, and other appliances were in every particular proper and necessary for the overhead trolley construction work to be performed at that place, and that they were used in the proper manner; therefore,

"It is hereby stipulated by and between the parties to the above-entitled action: (1) That said tower, guy rope, and other appliances were the same as were generally in use on the 3d day of December, 1891, for that kind of work. (2) That the method in which the work was performed was the usual

and customary way of doing that kind of work. (3) That there were no other methods or appliances for doing that kind of work in use on the 3d day of December, 1891. (4) That the said guy rope was maintained in position across said avenue no longer than was necessary in the erection of the poles and wires of said railroad. (5) That this stipulation may be read as evidence on the trial of the above-entitled action as full proof of the matters set forth in paragraphs Nos. 1, 2, 3, and 4 as above.

"Dated January 9, 1900."

It is evident that this stipulation, with its recitations and preamble, ought not to have been made; that when read to the jury, as in this case, and commented on in their presence, without being in any manner limited or explained, it was decisive of the case in favor of the defendant. The purpose of the stipulation was to establish (so the attorneys for both parties, by the recitations, say) that "such guy rope (and this means the rope placed as it was and where it was), tower, and other appliances were in every particular proper and necessary for the overhead trolley construction work to be performed at that place, and that they were used in the proper manner." If this was all true, then the complainant had no cause of action; the defendant was not a trespasser. The attention of the jury was not called to the point that, if the guy rope was extended across and fastened in the southerly extension of Lonsdale avenue, then the defendant was a trespasser in placing the obstruction (the guy rope) in the street, as he had no right to be at that place with his appliances. True, the jury was told that, if they found the rope was there, then they might find for the complainant; but why they might so find was not explained, and an intelligent jury would not so find in the face of the stipulation of complainant's attorney that the rope, placed as it was and where it was, was proper and necessary for the overhead trolley construction work to be performed at that place, and that they were used in the proper manner. If used by the defendant in the proper manner, he could not be a wrongdoer in so using it. If he was using this rope necessarily and in the proper manner, then he was not a trespasser in being where he was or in doing what he was doing with it. If he was wrongfully there in Lonsdale avenue at the point where complainant alleges he received his injuries, then he was not using that rope in the proper manner; for it was highly improper and dangerous to travelers to have it there at all.

It is evident that complainant's attorney had sufficient intelligence and knowledge of the law to bring the action in the proper manner, based on trespass; that is, on the ground that defendant was a trespasser, a wrongdoer, in placing the rope across Lonsdale avenue, if he did place it there. Why he should, in effect, stipulate the case out of court, if he was not in collusion with the defendant's attorney, is difficult to understand. We might say it was the result of ignorance; but this will hardly do, when we find that he understood the ground, and only ground, on which complainant could succeed. We might say it was the result of indolence; but this will hardly do, when we note that the burden of proving all the facts stipulated was on defendant, and not on the complainant. The attorney for the complainant in that action, when sworn as a witness in this action, says he did not expect to win the case. Then why did he not so advise his client? Why did

he not insist that the counsel employed by his client be present? Why did he not at least offer the evidence at hand? And why did he stipulate as he did in favor of the defendant, why make unwarranted concessions that defeated his client, or that tended to defeat his client, and why did he refuse or neglect to argue the case to the jury, when the court, notwithstanding the stipulation, had refused to dismiss the case, and had decided to submit to the jury a question of fact?

If the defendant had not obtained consent to place this rope in Lonsdale avenue, where he did place it (if complainant's contention is true), and if it was there in the manner and for the time claimed by the complainant, and by the witness not sworn on the trial, then it constituted a nuisance, an unlawful and unauthorized obstruction, and the defendant was liable in that action for the damages sustained by the complainant. Tinker v. N. Y., O. & W. R. Co., 157 N. Y. 312, 51 N. E. 1031; 15 Am. and Eng. Encyclopedia Law (2d Ed.) 444 et seq. It is quite true that in repairing a street, or in constructing a line of street railway along it, same may be reasonably and temporarily obstructed, provided such obstruction does not unreasonably interfere with the rights of the public. Flynn v. Taylor, 127 N. Y. 596, 28 N. E. 418, 14 L. R. A. 556; Welsh v. Wilson, 101 N. Y. 254, 4 N. E. 633, 54 Am. Rep. 698; Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St, Rep. 831; Tinker v. N. Y. O. & W. R. Co., 157 N. Y. 319, 51 N. E. 1031. If the municipal authorities of the city had consented that this defendant place that rope in the position it was placed, and maintain it there unlighted and unguarded during the darkness of the night, with the street open to travel, it may be that the defendant would be relieved of the imputation of trespassing; but it is claimed no such consent had been given. The only consent was that the railroad company construct its road along Mineral Spring avenue easterly from its intersection with Lonsdale avenue, and northerly along that avenue from its intersection with the first-named avenue, making the line continuous. Such consent carried the condition that no nuisance should be created elsewhere, or, if created, that due warning should be given the traveling public by lighting, or verbal or other notice, in which case the obstruction might lose its character of a nuisance. This obstruction or nuisance was constructed and created at other points on these avenues, and the case should have been in such shape as to submit to the jury whether such obstruction was reasonably necessary, and whether or not it unreasonably interfered with the rights of the public, and whether or not it was included in the consent given. Clearly the implied consent to obstructions would go no further than to the erection of those impediments reasonably necessary and which did not unreasonably interfere with the rights of the public. If the proper authorities consented to what was done, the defendant should have been left to his proof of the fact, as well as of the other facts covered by the stipulation.

The rule as to what must appear to relieve a person from the imputation of being a trespasser when doing an act in a public street is correctly stated in Babbage v. Powers, 130 N. Y. 281, 287, 29 N. E. 132, 134, 14 L. R. A. 398, thus:

"When conditions, whether express or implied, are annexed to the license [to do an act in a public street], substantial compliance therewith is essential to the protection of the licensee; but consent and compliance relieve the owner from the imputation of trespassing in doing the act consented to, and place him in the position of one liable for negligence only. Wolf v. Kilpatrick, 101 N. Y. 146, 4 N. E. 188, 54 Am. Rep. 672; Nolan v. King, 97 N. Y. 565, 49 Am. Rep. 561; Elliott on Roads and Streets, p. 541."

Here plaintiff's counsel stipulated the facts to be otherwise than as he knew them to be, and otherwise than as he was able to prove them to be. He refused to have counsel who knew the facts present at the trial, and refused to call a witness whose testimony was competent and material to show the existence of a nuisance. Mr. T——— could not plead ignorance or surprise, for the evidence given on the trial of the action against the city was placed in his hands before he brought the action in question. On the trial of this action against White Mr. T——— testified that he did not expect to win the case when he went to trial. This amounts substantially to an admission of such gross ignorance or misconduct in the management of the case as to constitute a fraud upon his client. If he regarded the case as at all doubtful, he should have had the counsel employed by complainant present, and should have produced all the evidence at his command.

This court is of the opinion, and is satisfied, that the complainant had and has a good cause of action against the defendant, and that the judgment against him was the result of the fraud and collusive conduct alleged in the complaint, and that complainant has no remedy at law. He was misled and deceived by his attorney, who informed him that he had moved for a new trial, when he had not. When a party has lost a right by fraud, accident, or mistake, and has no remedy at law, a court of equity has jurisdiction and power, and it is its duty, to give relief, set aside a judgment so obtained, and grant a new trial. Metcalf v. Williams, 104 U. S. 93, 95, 96, 26 L. Ed. 665. The court there said:

"When a party has been deprived of his right by fraud, accident, or mistake, and has no remedy at law, a court of equity will grant relief. Perhaps, in view of the equitable control over their own judgments which courts of law have assumed in modern times, the judgment might have been set aside, on motion, for the cause set forth in the bill; but if this were true, the remedy in equity would still be open, and the fact that the court declined to exercise the power upon motion rendered the resort to a bill necessary and proper. Formerly bills in equity were constantly filed to obtain new trials in actions at law, a practice which still obtains in Kentucky, and perhaps in some other jurisdictions; but the firmly settled practice by which courts of law entertain motions for new trial, and the dislike of one court unnecessarily to interfere with proceedings in another, has caused an almost total disuse of that jurisdiction. Courts of equity, however, still entertain bills to set aside judgments obtained by fraud, accident, or mistake."

It follows that the complainant is entitled to a decree setting aside the judgment referred to and awarding a new trial, and also setting aside and vacating the stipulation above quoted, and also directing a substitution of attorneys, with costs. The costs of that action will abide the result of such new trial.