### KING v. DAVIS et al.

#### (Circuit Court, W. D. Virginia. January 25, 1905.)

1. **FEDERAL COURTS—JUDGMENTS—VACATION AFTER TERM—PROCESS—FRAUDULENT SERVICE.**

   A federal law court has no power to vacate its judgment of a former term, founded on a false, but apparently valid, return of service of process. Such judgment may be vacated by suit in equity if plaintiff at law joined in the fraud of the process server, or if the latter was not an official. Such judgment not vacated in equity, if plaintiff at law did not join in the fraud, and if process server an official.

2. **SAME—CONSTRUCTIVE SERVICE—DEFECTIVE RETURN—AMENDMENT.**

   Where, pending a motion to vacate a judgment in ejectment, based on invalid returns of constructive service of process, a motion to amend was made, and the amended return disclosed a valid service, the motion will not be granted if the facts stated in the amended return are true.

3. **SAME—SUBSTITUTED SERVICE—AMENDMENT—NOTICE.**

   Where substituted service on a defendant in ejectment, made by leaving a copy with his wife, was invalid, for failure of the return to state that the wife was a member of his family, the subsequent personal service on defendant of a notice of an application by plaintiff for leave to amend the declaration was insufficient to confer jurisdiction of such defendant.

4. **SAME—AMENDMENT OF PROCESS—NOTICE.**

   Where a return of substituted service on a defendant in ejectment was fatally defective, and the court had not otherwise acquired jurisdiction of him, an application to amend such return will not be granted, in the discretion of the court, without notice.

5. **SAME—ENTRY OF JUDGMENT.**

   Where the original declaration and notice and a notice of application to amend were properly served on a defendant in ejectment instituted

in 1896, but the action was retired from the docket, without judgment against her, in 1900, she is entitled to notice and an opportunity to be heard before judgment can thereafter be properly entered against her.

6. SAME—VACATION OF JUDGMENT AFTER TERM—POWER TO CONTROL EXECUTION.

While a court of law has no power after the term to vacate a judgment, except for errors available on a writ of error coram vobis or on audita querela, or for want of jurisdiction shown on the face of the record, the court has power to so control the execution of its final process issued on such judgment as to prevent injustice.

7. SAME—EJECTMENT—JUDGMENT—EXECUTION.

Where a petitioner applying to vacate a judgment in ejectment, not a party to the action, is in possession, and would be illegally disturbed by the execution of a writ of possession, she is entitled to an order directing the marshal, in executing the writ, to leave her possession undisturbed.

8. SAME—MARRIED WOMEN—SEPARATE PROPERTY.

Under Va. Code 1887, § 2284 et seq. [Va. Code 1904, p. 1139], declaring that all real and personal property to which any woman is entitled at the time of her marriage, or which any married woman may acquire during coverture, and the rents, issues, income, profits, etc., therefrom, shall continue her separate estate, the mere prospective right of curtesy held by the husband of a married woman in land conveyed to her by her father did not entitle the husband to possession, nor give him any right to use the land or enjoy the rents and profits during coverture.

9. SAME—RIGHTS OF WIFE.

Where a wife owning a separate estate, and living on it with her husband, was not made a party with him to an ejectment suit by a third person, but her deed was not filed for record until long after judgment in favor of plaintiff, she is only entitled to have the judgment opened and be allowed to defend, and is not entitled to an order restraining the execution of the judgment as against her.

10. SAME—HUSBAND AND WIFE—JUDGMENTS—ESTOPPEL.

Where at the time a party was sued in ejectment the property belonged to his wife, who was then living, but was not sued, and after judgment and before execution the wife died, by which the husband acquired a life estate in the land, the judgment recovered against him does not operate as an estoppel with reference to such life estate.

11. SAME—VACATION OF JUDGMENT.

Where, at the time a husband was sued in ejectment, he was in possession by the mere sufferance of his wife, who held the title and resided on the premises, but was not sued, and the husband acquired a life estate in the land by the death of the wife after judgment and before execution, he is entitled, by reason of his wife's death, to have a judgment by default as to him opened and to be allowed to defend.

12. SAME—PURCHASERS PENDENTE LITE—RETURN OF SERVICE—AMENDMENT.

Innocent purchasers from defendants in pending ejectment suits in the federal courts in Virginia being bound by the record without the filing of a lis pendens, a return of service, defective in that it did not show that the wife of the person on whom process was served was a member of his family, was amendable as against an innocent purchaser from the defendant so served.

13. SAME—LIS PENDENS—FEDERAL COURTS—STATE STATUTES—APPLICATION.

Va. Code 1887, § 3566 [Va. Code 1904, p. 1903] providing that no lis pendens shall bind or affect a bona fide purchaser of real estate for a valuable consideration, without actual notice of such lis pendens, unless and until a memorandum, etc., is filed in the office of the clerk of the court in the county where the land lies, has no application to federal courts

sitting in Virginia; such courts having no power to enforce the registration of such memoranda.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

14. SAME—GRANTEE OF LANDLORD—ENFORCEMENT OF JUDGMENT—WRIT OF POSSESSION—INJUNCTION—PETITION.

Where ejectment was brought by a third person against a tenant, the landlord not being joined, a petition by a subsequent grantee of the landlord pendente lite, failing to allege that the landlord was ignorant of the institution of the action against the tenant, is insufficient to justify an order directing that the writ of possession on a default judgment in favor of plaintiff in the ejectment suit shall not issue and be executed against such purchaser.

15. SAME—INDEPENDENT TITLE.

Where the holder of an independent title to land sued for in ejectment, not a party to the suit, acquired possession through purchase from defendants in the action pendente lite, although without actual notice, he is subject to the execution of a writ of possession in favor of plaintiff in such action, notwithstanding his independent title has not been adjudicated.

16. SAME—VACATION OF JUDGMENT—ASSIGNMENT OF RIGHT.

Where ejectment was brought against a tenant, and the landlord was not joined, and had no notice of the action until after judgment had been rendered in favor of plaintiff, the landlord was entitled to convey her rights in the land, including the right to have such judgment opened and be permitted to defend, to a purchaser, innocent or otherwise.

17. SAME—CONVEYANCE OF STANDING TREES—POSSESSION.

Where a landowner conveys standing trees and a right of entry, retaining the remaining interest in the land, neither the grantor nor the grantee has actual or constructive possession of the trees, until the grantee actually engages in the work of felling the trees; the term "constructive possession" necessarily implying a partial actual possession.

18. SAME—EASEMENTS.

The fact that ejectment does not lie for a mere easement or other corporeal hereditament does not prevent an officer, in executing a writ of possession under a judgment in ejectment, from ousting from a tract of land persons who are unlawfully using a right of way over the same under purchase from defendants in the ejectment suit pendente lite.

19. SAME.

Mere use of a right of way over land sued for in ejectment under a purchase from defendants in ejectment pendente lite, for the purpose of transporting lumber from other tracts, does not constitute possession of the standing trees on the tract over which the right of way is, also conveyed to petitioner's remote grantor by persons not parties to the ejectment suit.

20. SAME.

A federal court judgment in favor of plaintiff in ejectment having been rendered in June, 1900, one of the defendants conveyed the surface of a part of the land sued for in October, 1901, after which the grantee conveyed the land to a lumber company which was not in existence at the time of the judgment, and the lumber company thereupon filed a petition to set aside the judgment, and for leave to defend; alleging that its grantor had no knowledge or notice of the judgment "until long after it was rendered." *Held*, that though such judgment, not docketed in the county where the land lay, may not be notice to an innocent purchaser, as provided by Act Aug. 1, 1888, c. 729, 25 Stat. 357 [U. S. Comp. St. 1901, p. 701], and Va. Acts 1889–90, p. 22, c. 23, the petition is insufficient, for failure to show that the corporation's vendor was a bona fide purchaser without notice, and when he became a complete purchaser.

**21. SAME—DECLARATIONS—AMENDMENT.**

An application for leave to amend a return of service on a notice of intent to apply for leave to amend a declaration in ejectment will be denied, no such notice being required as a condition to plaintiff's right to amend.

M. F. Stiles and Daniel Trigg, for plaintiff.
R. R. Henry and E. M. Fulton, for defendants.

## Opinion No. 2.

McDOWELL, District Judge. List of defendants named in the judgment of June 23, 1900:

| | |
|---|---|
| (1) John Allen. | (7) Elijah Estep. |
| (2) Cyrus Blankenship. | (8) H. M. France. |
| (3) Reese Davis. | (9) Montreville Hunt. |
| (4) Bazil Dotson. | (10) Robert Hurley. |
| (5) David Dotson. | (11) Arch. Justus. |
| (6) Ransom Dotson. | (12) Levi Woolford. |

(13) S. W. McInturf.  ⎫   Judgment set aside
(14) Mary Woolford.  ⎬  by order of December 2, 1902.
(15) Wm. R. Woolford. ⎭

Original service of original notice and declaration valid as to:

| | |
|---|---|
| (1) John Allen. | (6) H. M. Francis. |
| (2) Bazil Dotson. | (7) Montreville Hunt. |
| (3) David Dotson. | (8) Robert Hurley. |
| (4) Ransom Dotson. | (9) Archibald Justus. |
| (5) Elijah Estep. | (10) Levi Woolford. |

Insufficient as to:
Cyrus Blankenship.
Reese Davis.

Parties defendant now submitting motions:
Same as the first 12 named in judgment.

Parties defendant named in proposed amended return of service of original notice and declaration and amended return of service of notice of July 11, 1898:

Same as first 12 named in the judgment, and, in addition, John Dotson and Jane Mounts.

Some time prior to December 21, 1903, I sent to counsel in this case a written opinion, which was filed on said date, and which, for identification, will hereafter be referred to as opinion No. 1 (137 Fed. 198), which deals with the questions which had been raised up to that time. On December 21, 1903, the plaintiff filed a written motion, with which were tendered two affidavits by A. J. Manns; praying, in effect, that the return of service of the original declaration and notice and the return of service of the notice of July 11, 1898, might be amended. The two affidavits are returns of service of the above papers, made out in the strictest form. As will appear from the order of December 21, 1903, this motion was not then acted on, and time was allowed for sundry interested persons to file petitions—some to show why the amendments should not be allowed, and others to show a right to have

137 F.—15

the judgment of June 23, 1900, opened, or a right to have the writ of possession withheld. Sundry petitions were filed January 18, 1904. On February 15, 1904, a written motion on behalf of the plaintiff to strike out these petitions was filed; and on March 27, 1904, plaintiff tendered provisionally (to be filed if the motion to strike out should be overruled) demurrers to these petitions. On June 23, 1904, the petitioners tendered other petitions, which they asked be substituted for the petitions filed January 18, 1904. As these new petitions merely amplify those of January 18th, no objection was made to the substitution. The motion to strike out and the demurrers are, of course, to be treated as applying to the new petitions. On September 29, 1904, the judgment defendants filed an amended motion to vacate the judgment of 1900, and they will be treated as having filed therewith (although the papers have not yet been sent in) amended pleas No. 3.

(I) Amended Motion to Vacate Judgment Filed September 29, 1904.

The questions presented by this amended motion have been, I think, sufficiently discussed in opinion No. 1, except that of the motion to vacate on the grounds set up in the pleas to the scire facias. With this amended motion is an amended plea, No. 3, a sample of which has been sent me. The pleas are now in possession of counsel for defendants in order that these amended pleas may be prepared and verified, but it does not seem necessary to wait for them. The point made is that the pleas No. 3 as thus amended are not inconsistent with pleas No. 2, and that pleas No. 2 are intended as absolute and unequivocal sworn statements that the notice and declaration were never in fact served on these defendants. The defendants in whose behalf this amended motion is made are the 12 defendants named in the judgment of June 23, 1900. I shall for the present leave out of view the rights of Cyrus Blankenship and Reese Davis, as to whom the original return of service is defective. That a return of service of process, valid on its face, cannot, under the circumstances here, be attacked by a plea to the writ of scire facias, is, I think, established by the authorities cited in the former opinion in discussing plea No. 2. In considering the right of a judgment defendant at law to have relief in the federal courts from a judgment rendered at a former term on a false return of service of process, it is advisable to consider, first, the case where the plaintiff shared in the fraud; and, second, where the false return was the act of the process server alone.

(1) Where the Plaintiff at Law Participated in the Fraud.

(A) Under such circumstances, there is, I think, no doubt as to a right to relief from the judgment—the defendant at law being free from laches—by bill in equity. No citation of authority is needed to support this proposition, but see Marshall v. Holmes, 141 U. S. 589, at page 596, 12 Sup. Ct. 62, at page 64 (35 L. Ed. 870), and cases hereinafter cited.

(B) Under such circumstances, I think that in the federal courts relief is obtainable only in equity, and cannot be had on motion to vacate made in the court which rendered the judgment after the end of the term at which it was rendered. Undoubtedly many of the state law courts have and exercise this power. In some states this power is expressly conferred by statute. In others it is considered one of the "inherent powers" of the law courts. But the language used by the Supreme Court in the following cases seems to be capable of no construction other than a denial of such power to the federal law courts. This conclusion seems to follow from what is said in Pickett v. Legerwood, 7 Pet. 144, 8 L. Ed. 638. In stating the grounds for writ of error coram vobis, the only one by possibility to be made applicable to the case at bar is at page 148 of 7 Pet., page 639 of 8 L. Ed., "Error in process, or through default of the clerk." From what is said in later cases (I have not access to Archbold's Practice, from which the quotation is made), it seems probable that this is a misprint (Bronson v. Schulten, 104 U. S. 416, 26 L. Ed. 799; Sibbald v. U. S., 12 Pet. 492, 9 L. Ed. 1169; Bank v. Moss, 6 How. 38, 12 L. Ed. 334) and should have read, "Error in process through default of the clerk." It seems probable, also, that the word "process," as there used, means "proceeding." But in addition, see Sibbald v. U. S., 12 Pet. 488, 492, 9 L. Ed. 1167; Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467; Bank v. Moss, 6 How. 31, 38, 39, 12 L. Ed. 331; Hall v. Lanning, 91 U. S. 163, 165, 23 L. Ed. 271; Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; especially Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; Marshall v. Holmes, 141 U. S. 589, 596, 597, 12 Sup. Ct. 62, 35 L. Ed. 870. See, also, Grames v. Hawley (C. C.) 50 Fed. 319, 320; Craven v. Canadian R. Co. (C. C.) 62 Fed. 170, 171; Ins. Co. v. Pelzer Co., 76 Fed. 479, 481, 22 C. C. A. 283; Dick Co. v. Wichelman (C. C.) 106 Fed. 637; City v. Ins. Co., 107 Fed. 52, 46 C. C. A. 144; Sanford v. White (C. C.) 132 Fed. 531, 535.

In Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013, the law trial court entered an order vacating a judgment rendered at a prior term. The ground for so doing was that, after the appearance of the judgment defendant, the plaintiff, by fraud and deceit, led the defendant not to contest the case on its merits. This action was reversed by the Supreme Court.

In Craven v. Canadian Pac. R. Co. (C. C.) 62 Fed. 170, a judgment at law in the United States Circuit Court for the district of Massachusetts had at the May term, 1893, been entered in favor of the plaintiff by agreement of counsel. At the June term, 1894, of the same court, a petition to vacate said judgment was filed, setting up the fact that the counsel who agreed to the judgment was not authorized so to do. The court denied the relief prayed for on the ground that it was without power after the end of the term to vacate a judgment.

Insurance Co. v. Pelzer, 76 Fed. 479, 481, 22 C. C. A. 283, was an action at law in a state court in South Carolina on two insurance policies, in which the verdict was intended to be for the plain-

tiff for the amount of both policies. By clear mistake the foreman of the jury reported a verdict for the plaintiff for only the amount of one of the policies. Judgment in accordance with this verdict was entered. After the end of the term, the mistake being discovered, a bill in equity in the state court was filed by the plaintiff at law against the insurance company to correct the error. This equity case was removed to the federal court. The lower federal equity court granted the relief as prayed, and on appeal this ruling was affirmed. A question considered by the appellate court was whether or not equity had jurisdiction. In deciding this question in the affirmative, Judge Morris said that the law court, after the end of the term, had no power to correct the mistake, and that there was equity jurisdiction, because the complainant was without relief at law.

Sanford v. White (C. C.) 132 Fed. 531, 535, was a bill in equity in the federal court to set aside a judgment at law rendered by that court at a former term. The judgment at law had been rendered in favor of the defendant at law in consequence of the fraud of the attorney for the plaintiff at law. The equity court set aside the judgment at law, saying:

"This court is of the opinion and is satisfied, that the complainant had and has a good cause of action against the defendant, and that the judgment against him was the result of the fraud and collusive conduct alleged in the complaint, and that complainant has no remedy at law. He was misled and deceived by his attorney, who informed him that he had moved for a new trial, when he had not. When a party has lost a right by fraud, accident, or mistake, and has no remedy at law, a court of equity has jurisdiction and power, and it is its duty, to give relief, set aside a judgment so obtained, and grant a new trial."

It is true that I have found no federal case in which the judgment at law was obtained by the fraud of the plaintiff at law in obtaining a false return of service of process. But I can draw no sound distinction in principle between such case and the cases above mentioned.

(2) Where the False Return of Service of Process is the Sole Act of the Person Making the Return.

(A) Where the person making the return is an officer, it seems that there is no relief in equity in the federal courts. Walker v. Robbins, 14 How. 584, 585, 14 L. Ed. 552; Knox County v. Harshman, 133 U. S. 152, 156, 10 Sup. Ct. 257, 33 L. Ed. 586.

Whether or not the federal equity court could properly grant relief where the false return is made by one not an officer, and who is for the time being an agent of the plaintiff at law, need not now be decided. In passing, however, it may be noted that in Kibbe v. Benson, 17 Wall. 624, 21 L. Ed. 741, relief in the federal equity court against a judgment of a former term in ejectment in the federal law court was granted on the ground that the defendant at law had no notice. In this case, by mistake or fraud, a private process server, apparently without connivance of the plaintiff at law, made a false return of service. However, as we are now dis-

cussing the power of the federal law courts over judgments of a former term, it will be well to go further.

(B) From the cases cited supra, it seems to follow that the federal law court has no more power after the end of the term to set aside its final judgment on the ground that there was a false return of service of process, in which fraud the plaintiff at law did not participate, than in the case where the fraudulent return was induced by the plaintiff.

(1) The enumeration of the errors that can be relied on to support a writ of error coram vobis in Pickett v. Legerwood, Bronson v. Schulten; Phillips v. Negley, and other cases cited above, does not embrace this case. And if there is a want of power in the federal law courts in cases where the false service was induced by the plaintiff at law, there must be the same want of power where the false return is the act of the process server alone.

(2) It has been a disputed question for many years whether or not in such cases the sole remedy of a defendant, after the end of the term at which the judgment is rendered, is not against the official process server. While many of the state courts grant relief by vacating after the term the judgment obtained on a false return, some of them take the view that public policy forbids such relief. The latter is the view taken by the Virginia Court of Appeals. Ramsburg v. Kline, 96 Va. 465, 31 S. E. 608. See, also, Preston v. Kindrick, 94 Va. 760, 27 S. E. 588, 64 Am. St. Rep. 777. The position taken by the Supreme Court in Walker v. Robbins, 14 How. 585, 14 L. Ed. 552, and Knox County v. Harshman, 133 U. S. 156, 10 Sup. Ct. 257, 33 L. Ed. 586, is readily explicable on the theory that that court holds as sound the view taken by the Court of Appeals in Virginia. In Walker v. Robbins the following language is used:

"In cases of false returns affecting the defendant, where the plaintiff at law is not in fault, redress can only be had in the court of law where the record was made; and, if relief cannot be had there, the party must seek his remedy against the marshal."

This is not an intimation that relief can be had in the court where the record was made after the end of the term at which the judgment was rendered. On the other hand, this language is either merely used to avoid an obiter dictum, or it expressly recognizes the fact that the court of law rendering the judgment may have lost the power to vacate it.

The same point is to be observed as to the language used in Knox County v. Harshman, 133 U. S. 156, 10 Sup. Ct. 258, 33 L. Ed. 586:

"If that return were false, yet, no fraud being charged or proved against the petitioner, redress can be sought at law only, and not by this bill."

This certainly is not necessarily an intimation that the law court has power after the end of the term to grant relief by vacating the judgment. It is more reasonably explained by supposing that the court had in mind (1) relief at law by a vacation of the judgment by the court that rendered it at the same term; or (2) by action at

law for damages by the judgment defendant against the process server.

The conclusion which seems to be necessarily drawn from the cases above cited is that a federal law court has, after the end of the term, no power to vacate a judgment at law founded on a false, but apparently valid, return of service of process.

Let us now consider the motions to vacate made by Cyrus Blankenship and Reese Davis, the two judgment defendants as to whom the return of service of the original notice and declaration was defective. If no motion by the plaintiff to be allowed to amend these returns had been made, under Harris v. Hardeman, 14 How. 334, 14 L. Ed. 444, and cases following that case, 5 Rose's Notes, p. 254, I think these defendants might be entitled to relief. The power affirmed in Harris v. Hardeman to lie in a federal law court after the end of the term to set aside a judgment is predicated on the fact that the record shows that the service of process was invalid. In the case at bar we have invalid returns of constructive service of process, but, pending the motion to vacate, a motion to amend the return is made. If the amended return be true in fact, this court had jurisdiction of these two defendants at the time judgment was rendered. Hence, conceding that there is no want of power in this court to vacate the judgment as to these two defendants, it would clearly be wrong to do so, so far as the rights of Blankenship and Davis are concerned. Whether or not the right to amend exists as to third persons, purchasers from these defendants, will be discussed later in this opinion.

It follows from what has been said that the motion to vacate the judgment of June 23, 1900, must be overruled as to all the defendants except Davis and Blankenship. As to them the question should be reserved pending a decision as to the truth of the proposed amended return.

It will be well to consider next the right of plaintiff to now amend the return of service as to the two defendants not included in the judgment—John Dotson and Jane Mounts.

## (II) JOHN DOTSON.

This man was a party defendant named in the original notice. The service of the original declaration and notice was made as to him by leaving a copy with his wife. The original return does not state that his wife was a member of his family. For the reasons stated in opinion No. 1 in discussing the return of constructive service on Reese Davis, I consider this return invalid. The notice of July 11, 1898, was, as appears, personally served on John Dotson on July 15, 1898. But this, I am satisfied, cannot be considered sufficient to have given the court jurisdiction of John Dotson. This man is not mentioned in the scire facias, and he was not served with the scire facias. He has not filed any motion, plea, or petition, and in fact has never in any way appeared. The proposed amendment of return shows that John Dotson's wife was a member of his family at the time of the service. If this amended return be true in

fact, the court did have jurisdiction from the first. The amendment merely perfects the evidence that the court had jurisdiction. But as the allowance of amendments to returns is within the discretion of the court, it seems to me that it should not be allowed to be made after so long an interval without notice to Dotson, and an opportunity given him to be heard. The question as to the right to amend is made more interesting by the fact that John Dotson is not mentioned in the judgment of June 23, 1900. Whether or not the action of ejectment instituted in 1896 is still pending, and the propriety of allowing the proposed amendments, need not now be determined. In any event, John Dotson must be given notice and an opportunity to be heard before anything against his interest can be done.

### (III) JANE MOUNTS.

The case of Jane Mounts, in so far as the motion to amend the return is concerned, need not be considered. She is not a party to the scire facias proceedings; but the original returns of service of the original declaration and notice and of the notice of July 11, 1898, are in correct form. There is no need of amending them as to Jane Mounts. It may not be amiss, however, to say that I am, as at present advised, of opinion that she is entitled to notice and an opportunity to be heard before judgment in the ejectment suit could properly be entered against her. The action was instituted in 1896, and it was retired from the docket, doubtless by mistake, without judgment against her, in 1900.

### (IV) OPENING JUDGMENTS FOR LANDLORDS.

Before taking up the various petitions, it will be well to set out here as briefly as may be the reasons which led me, while preparing opinion No. 1, to conclude that a judgment of a former term in ejectment against a tenant could under some circumstances be "opened," and the landlord allowed to defend the action.

The expression "opening a judgment" is perhaps not the happiest possible; but it means, as I understand, simply to open up the controversy, let the landlord appear and plead to the declaration, let the plaintiff have the advantage of the pendency (in this respect) of his action since its original institution, and thus to arrive at a decision of the controversy on its merits. In view of the want of power of the federal law courts over their judgments of a former term, it is perhaps advisable to say here that by "opening the judgment" there is no vacation or amendment of the judgment against the tenant defendant. Such judgment stands unaffected. But if the tenant defendant is, when the judgment is to be executed, no longer in possession of the land; and if the landlord, who had no knowledge of the action, is himself in possession, or has a new tenant in possession, at the time the writ of possession is to be executed, an interesting and close question is presented. The writ, of course, directs the marshal to dispossess the tenant defendant. If my views are correct, the marshal would be instructed by the court to return the writ unexecuted if the new occupant is a landlord, or

a new tenant of a landlord, who had no notice of the action, and did not directly or indirectly contest the case. If there be no opening of the case, the result is that the plaintiff has gained nothing by his judgment, and must bring a new action. The plaintiff might in such event be held to be barred by limitation, although he was not barred at the time of the institution of the former action. On the one hand, it may be said that a plaintiff who makes so little use of the means ordinarily available of ascertaining who the real adverse claimant is, should take nothing by a judgment against a tenant who surrenders his possession to his landlord before such judgment is executed. On the other hand, it may be said that the landlord selects the tenant, and, if the latter does not inform the landlord of the pendency of the action, the fault is attributable to the negligence of the landlord in selecting such a tenant, and that a judgment against the tenant should be executed against the landlord, and thus put the landlord to bring an action against the party recovering the judgment in order to secure a trial of the merits of the controversy. Either view may be justified by some authority, and, dependent on some matter of fact, either view may be the right one in some particular case. But in the Justus-Sibley Case— the one now in mind—it seems to me that the most equitable and just decision is to open the judgment and allow Sibley to defend. Inquiry made before the institution of the action in the neighborhood of the tract occupied by Justus could hardly have failed to apprise the plaintiff that Justus was a mere tenant, and as to the name of his landlord. A deed conveying the tract in question to Sibley had been recorded in the clerk's office of Buchanan county in 1889. Consequently the plaintiff cannot occupy the position of one who has been fully diligent. The plaintiff desires that a judgment against a tenant be executed against a landlord who had no notice and whose right has never been presented in court. The position of the plaintiff, from a standpoint of pure justice, does not seem impregnable; and, in the irreconcilable conflict of merely persuasive authorities, and because of the want of any controlling decision, this court has no guide for the decision of this question, other than to adopt the view that seems most just. To direct the marshal to leave undisturbed Sibley's new tenant, without more, would not be entirely just to the plaintiff. He would have to bring a new action, and the adverse possession of the land since 1896 might possibly be counted against him. Sibley should not in strict justice entirely escape the result of the negligence or ignorance of the tenant (Justus) selected by himself, and thus possibly obtain the benefit of an adverse possession after the institution of the action. Neither party is entirely free from the charge of negligence, and opening the case allows a fair trial on its merits of an unadjudicated controversy; both parties thereto being allowed to occupy exactly as strong ground as that which they respectively held in 1896.

The case now under consideration is wholly different from Vance v. Wesley, 85 Fed. 157, 29 C. C. A. 63. There an intruder—"an interloper"—entered after judgment, and before writ of possession

was executed. Even treating Vance as a subsequent tenant, the landlord (the state) had previously contested the title on its merits in the action against Tindal and Boyles.

It should be here stated that while I understand that the law court has no power to vacate its judgment of a former term, except for errors of fact such as can be relied on under writ of error coram vobis, for a fact occurring after judgment such as can be relied on audita querela, or for want of jurisdiction shown on the face of the record, still such court has power, equitable in nature, to so control the execution of its final processes as to prevent a wrong from being done thereby. See 2 Freeman, Executions (2d Ed.) § 472, p. 1479; Sedgwick & Wait (2d Ed.) §§ 564, 566; Newell, Ejectment, p. 816. As incidentally recognizing this power in the federal law courts, see Pickett v. Legerwood, 7 Pet. 144, 8 L. Ed. 638; Amis v. Smith, 16 Pet. 303, 311, 10 L. Ed. 973; Boyle v. Zacharie, 6 Pet. 648, 8 L. Ed. 532; U. S. v. McLemore, 4 How. 286, 288, 11 L. Ed. 977; Humphreys v. Leggett, 9 How. 297, 312, 313, 13 L. Ed. 145; McCargo v. Chapman, 61 U. S. 555, 556, 15 L. Ed. 1021; Ex parte Flippin, 94 U. S. 348, 350, 24 L. Ed. 194; Freeman v. Dawson, 110 U. S. 264, 270, 4 Sup. Ct. 94, 28 L. Ed. 141; The Elmira (C. C.) 16 Fed. 133.

### (V) Petition of Mary Estep.

I should say at the outset that the mere fact that a petitioner is not a party defendant presents, as it seems to me, no insuperable obstacle to granting proper relief. There is no doubt that in deciding whether or not to issue the writ of possession, as well as in the matter of amending the returns of service, the court is at liberty to exercise a reasonable discretion, and will be governed by what may be termed equitable principles. Where a petitioner not a party to the action is in possession, and would be disturbed therein illegally by the execution of a writ of possession, such person can surely reach the attention of the court at this stage of the proceeding. Even after execution of the writ of possession, the courts will issue writs of restitution to restore possession to persons who have been put out of possession wrongfully. If any of the petitioners have a right to remain in possession, that right should not be disturbed. A petition showing the facts on which such claim of right rests, and praying that the right be safeguarded, is, I think, the best method of proceeding. The motion to strike out must be overruled as to all the petitions. If in any of them the facts stated do not show the petitioner entitled to relief in this court in this proceeding, the demurrer to such petition will be sustained, and the plaintiff's rights thus as effectually guarded as by striking out.

The facts set up in the petition of Mary Estep are that Elijah Estep, a defendant, who was properly served with notice, is the husband of the petitioner; that he was at the institution of the action living with his wife on a tract of land conveyed to his wife by her father in 1883 (a copy of the deed being exhibited), and which has been ever since her separate estate. It is alleged that Elijah Estep has never owned any land, and that Mary Estep had

no knowledge of the pendency of the action. She was not herself a party to the action. Her prayer is that no writ of possession go against her husband, or that it be so framed as not to interfere with her rights.

Under the act of March 7, 1900 (Acts 1899–1900, p. 1240, c. 1139), as under the Code of 1887, § 2284 et seq. [Va. Code 1904, p. 1139], the land described in the deed to Mary Estep is her separate estate. During her life she has the right to hold, use, and control it as if unmarried. The merely possible and prospective right of curtesy on the part of her husband (Breeding v. Davis, 77 Va. 639, 46 Am. Rep. 740; Campbell v. McBee, 92 Va. 68, 22 S. E. 807; Bankers' Co. v. Blair, 99 Va. 606, 39 S. E. 231, 86 Am. St. Rep. 914) does not entitle him to the possession, or give him any right to use the land, or enjoy the rents, issues, or profits, during the coverture. Elijah Estep, was, therefore, when this action was instituted, not on the land by any marital right. His position was somewhat that of a guest of his wife. Or, if he is to be treated as having been the real party holding possession, his position is perhaps somewhat analogous to that of a tenant. In either event the rights of the wife should not be impaired.

Whether or not the relief asked by Mary Estep can be granted only on condition that she make herself a party defendant to the action of ejectment is not so easy of solution. If she becomes a party to the action instituted in 1896, she loses the benefit of her adversary possession since that date. I think a landlord whose tenant was made a defendant can ask no more than that the judgment against the tenant be opened, and that he (the landlord) be allowed to make himself a defendant and contest the case. But in so doing he loses, I think, the benefit of the adverse possession of himself or of his tenant since the institution of the suit. It seems to me that a wife owning a separate estate, and living on it with her husband, who is not sued with her husband, is in a somewhat stronger position than an absentee landlord. She has herself all the time been in actual possession of the land. But in the case before us the deed to Mary Estep was not recorded until 1902. If it had been on record prior to the institution of the action, I incline to the opinion that she should not be required to become a party to the action. The plaintiff, under such circumstances, would have simply not used the means easily at his disposal to learn the proper party to sue. As the case stands, treating the petition as true in all respects, I am of opinion that the proper course is to open the judgment, allow Mary Estep to plead to the declaration, and withhold the writ of possession against Elijah Estep quoad this tract of land. The demurrer to this petition must be overruled.

(VI) Petition of Mary Hurley et al.

The facts here asserted and essential to be considered are as follows: The petitioners are the infant children of Robert Hurley and Marinda Hurley. The latter died in 1902. Robert Hurley was a defendant, duly served with notice, but at that time he owned and claimed no land. He was living with his wife on land belonging

to her, which had been conveyed to her by her father in 1895 by deed recorded in 1895. Since Marinda Hurley's death, Robert Hurley and these children have been living on the land described in the deed above mentioned. Marinda Hurley was not a party to the ejectment suit. But it is not alleged that she did not have knowledge of the action long before judgment. At the time the suit was instituted, and at the time the judgment was rendered, Robert Hurley was not in possession by any marital right. He is now in possession by right of the life estate by the curtesy acquired since the judgment from one not a party to the action. That the judgment against him is not an estoppel, and that he could, if put out by writ of possession, sue without regard to that judgment, is, I think, settled. Sedgwick & Wait, Trial of Title, § 541, p. 395; 2 Black on Judgments (2d Ed.) §§ 556, 655, 659. While I have found no authority directly in point, it seems to me that the situation as to Robert Hurley is such that his motion to vacate the judgment may, on the facts set up in this petition, be treated as one in lieu of the writ of audita querela, and that the judgment against him should be set aside. His accession to a life estate in the land has transpired since the judgment. Under the Virginia statute law as to the separate estates of married women, I think that Hurley could not have required his wife to make herself a party to the action. He himself before her death had no title, and his possession was under a person not sued. He is not in the position of one now relying on a title on which he could have relied (at least, without the voluntary act and consent of his wife) prior to judgment. He falls within the general rules laid down as to the issue of the writ of audita querela (4 Minor [3d Ed.] p. 1050; 1 Am. & Eng. Ency. [1st Ed.] 1003), and is not barred therefrom by the ruling in Avery v. U. S., 12 Wall. 304, 20 L. Ed. 405. Humphreys v. Leggett, 9 How. 297, 13 L. Ed. 145, is authority for the proposition that either the law court or the equity court can grant the relief asked under such circumstances as we have here. Treating the facts set up in this petition as true, the order should be that the judgment against Robert Hurley be vacated, that he be required within a short time to enter his appearance in the original action, and that no writ of possession issue as to Robert Hurley quoad the 100-acre tract in question. This order may also, if the plaintiff so desires, grant the plaintiff leave to make the Hurley children parties defendant. Acts 1895–96, p. 514, c. 497. It is true that Robert Hurley is not in his own right a party to this petition, but this seems a defect of form rather than of merit. Robert Hurley is the successor in interest of one who could at the most ask that the judgment be opened on condition that she enter her appearance as a defendant. Hurley's right to a vacation of the judgment on audita querela is modified by plaintiff's rights as against Hurley's predecessor in title.

The demurrer to this petition must be overruled.

### (VII) Petition of Hiram W. Sibley.

The facts set up here are as foreshadowed in opinion No. 1. If the truth of the facts stated is not contested, the writ may, if

desired, go as against Archibald Justus, but with it will go instructions to the marshal not to disturb the possession of H. W. Sibley or of his new tenant, G. H. Davis, as to the 1235¼ acres described in the deed from N. B. Dotson to Sibley. This relief should be granted, however, on condition that Sibley within a reasonably short time, to be fixed by the order, enters his appearance as a defendant in the ejectment cause.

It was suggested by counsel for the plaintiff that this court has no jurisdiction to consider this petition, as Sibley is a citizen of New York; the plaintiff being also a citizen of that state. If Sibley had intervened and asked to be made a defendant in lieu of his tenant, Archibald Justus, prior to the rendition of the judgment, and an order to such effect had been made, the jurisdiction would not have been ousted. Phelps v. Oaks, 117 U. S. 241, 6 Sup. Ct. 714, 29 L. Ed. 888; Hardenbergh v. Ray, 151 U. S. 118, 14 Sup. Ct. 305, 38 L. Ed. 93. The present proceeding is in some respects a mere continuation of the ejectment cause, and jurisdiction as between King and Sibley is ancillary to that obtained as between King and Justus. The relief now ultimately sought by Sibley is the right to contest King's claim to the land. In other words, it is the same relief he would have sought, and to which he would have been entitled, had he intervened before the judgment was rendered. There is a strong analogy between the case now before us and a petition of intervention in a chancery suit in a federal court, where a citizen of the same state as the complainant intervenes. This does not defeat the jurisdiction. Judge Shiras says:

"The right of the court to grant such leave and to hear and adjudicate upon the rights of such intervener is not defeated by reason of the fact that such intervener and complainant are citizens of the same state." Shiras, Eq. Pr. (2d Ed.) p. 97.

See, also, Krippendorf v. Hyde, 110 U. S. 276, 283, 284, 4 Sup. Ct. 27, 28 L. Ed. 145; Park v. N. Y. R. Co. (C. C.) 70 Fed. 641, 642.

It seems to me, therefore, that this court has jurisdiction to consider Sibley's petition, and to allow him proper relief thereunder.

The demurrer to this petition must be overruled.

### (VIII) PETITION OF A. C. FLOOD.

The facts now to be considered set up in this petition are: By patent issued in 1876 there was granted to one Lohnert et al. a tract of 2,500 acres of land lying within the lines of plaintiff's claim. By various conveyances one R. L. Brown, Jr., came to be the sole holder of this title by deed dated in 1890. Later—the date not being stated—Brown instituted an action of ejectment at Abingdon against sundry persons, including Reese Davis, H. M. Francis, and S. W. McInturf, who claimed under one Jonathan Hurley, who had a "court right" covering some 2,000 acres of the 2,500 acres. This action was compromised, and by deed dated March 14, 1899 (after the institution of King's action, but before judgment), Brown conveyed what may be conveniently called the "surface" of 362½ acres to Reese Davis, the surface of 503¼ acres to H. M. Francis, and the surface of 134 acres to S. W. McInturf; and said parties

conveyed to Brown the coal under these tracts, certain standing timber, and certain "mining rights." On April 25, 1899, Brown conveyed the coal and mining rights to Flood, the petitioner. The petitioner further alleges that Reese Davis, H. M. Francis, and S. W. McInturf did not claim at the time the King suit was instituted, or at the date of the judgment therein, any land except the three tracts mentioned in the deed between them and Brown. It is alleged that neither Brown nor Flood had any knowledge of the pendency of the King suit. It also alleged that, when the King suit was instituted, Levi Woolford—a defendant properly served with notice—was living on the S. W. McInturf tract, above mentioned, as the tenant of McInturf.

(A) I shall first consider the right to amend the return of service on Reese Davis (treating the proposed amended return as true in fact) quoad Flood's rights as a purchaser under Davis. And in this discussion I shall proceed on the theory that all persons must take notice of the pendency of an action of ejectment in the federal court, without the filing by the plaintiff of a memorandum of lis pendens in the county where the land lies.

The cases of Powers v. Carter Co., 100 Va. 450, 41 S. E. 867, and Shenandoah R. Co. v. Ashby, 86 Va. 232, 9 S. E. 1003, 19 Am. St. Rep. 898, excellently illustrate when amendments should and when they should not be allowed as against third persons whose rights have intervened. In the Powers Case an examination by the Carter Company (purchaser after judgment from a judgment defendant) of the record of the Dickinson county court would have led to the belief that the original judgment was rendered at a term other than that to which the notice had been given, and that it was therefore void. In the Ashby Case the return of service omitted to state that the director of the defendant corporation on whom service was made lived in the county in which service was made, which the statute requires. In the Powers Case the amendment of the record by nunc pro tunc order was not allowed to affect the rights of the Carter Company. In the Ashby Case the amendment was allowed, with the intent that the judgment should become valid as against subsequent mortgagees of the defendant corporation. I think the true theory is to consider that the third person either did examine or should have actually examined the record. If what he finds there shows the proceeding to be void, he cannot be affected by a subsequent amendment. But if what he finds on the record leaves it open to question whether the proceeding is void or not, he should be bound by a subsequent amendment. For instance, suppose he finds a return of service on a corporation showing that service was made five days prior to the return day; the statute requiring service to be made at least ten days before return day. Now, if in fact the service was made 15 days prior to the return day, while there may be a right to amend the return according to the fact as against the defendant, there should not be such right as against a third person. Such third person has a right to assume the truth of the return. But if the return is imperfect, merely, as in the Ashby Case, and as in the case at bar (being merely silent

as to Davis' wife being a member of his family), I think the return can be amended as against the third person. The inquirer has not been deceived by the record. The return shows him that the service may have been properly made. If, treating a pending suit as being notice, he did not look at the record, he had no actual knowledge of the infirmity of the return, but did have constructive notice of what the record would have revealed. If he did look at the record, he was, in reason, put in possession of knowledge sufficient to inform him that the service may have been strictly regular. He could have made inquiry in pais and learned the truth. If he did not make such inquiry, he should be held to the risk which he took. It follows that if all persons are bound to take notice of a pending suit in ejectment in a federal court in Virginia without a memorandum of lis pendens having been filed—a question to be considered later—the return as to Reese Davis can be amended both as to Davis and as to Flood. If innocent purchasers from defendants in pending ejectment suits in the federal court in Virginia are not bound where no memorandum of lis pendens is filed, it will not be necessary to consider the question of amending the return of service on Reese Davis quoad Flood's rights. If Flood is protected as an innocent purchaser, he is not concerned as to the amendment. It will not affect him.

(B) Let us now consider the question—treating the amended return of service on Davis as true in fact—of Flood's rights as a pendente lite purchaser from Reese Davis. I shall later discuss his rights under the Lohnert patent. Neither he nor Brown had actual notice of the pendency of the King suit. It was after the institution of the King suit and before judgment that Brown took title from Davis to the coal, etc., and that Flood took title from Brown. I understand that it is conceded that no memorandum of lis pendens (section 3566, Code 1887 [Va. Code 1904, p. 1903]) was recorded in Buchanan county.

Section 2756, Code 1887 [Va. Code 1904, p. 1414], which is a part of the chapter relating to ejectment, reads:

"Judgment to be Conclusive. Any such judgment in an action of ejectment * * * shall be conclusive as to the title or right of possession established in such action upon the party against whom it is rendered, and against all persons claiming from, through, or under such party, by title accruing after the commencement of such action. * * *"

Section 3566, Code 1887 [Va. Code 1904, p. 1903], reads:

"No lis pendens * * * shall bind or affect a bona fide purchaser of real estate, for valuable consideration, without actual notice of such lis pendens, * * * unless and until a memorandum setting forth the title of the cause, the general object thereof, the court in which it is pending, a description of the land, and the name of the person whose estate is intended to be affected thereby, shall be left with the clerk of the court of the county or corporation in which the land is situate, who shall forthwith record the said memorandum in the deed book, and index the same in the name of the person aforesaid."

I am inclined to think, so far as the state courts are concerned, that the leaving of a memorandum with the proper clerk is essential in order to bind a pendente lite purchaser from a defendant in

ejectment. I shall not, however, pause to discuss this question, as I have reached the conclusion that the lis pendens statute (section 3566) does not control the effect of a judgment in ejectment in a federal court in Virginia. If this statute were held to apply to suits pending in the federal courts, the strongest argument in support of such conclusion that occurs to me would be as follows:

(1) The thirty-fourth section of the original judiciary act (Act Sept. 24, 1789, c. 20, 1 Stat. 92), now section 721, Rev. St. [U. S. Comp. St. 1901, p. 581], makes the state laws which are rules of property, and are not in contravention of the federal Constitution, laws, or treaties, the rule of decision in trials at common law.

(2) The question now before the court involves judicial action (unlike the case of Wayman v. Southard, 10 Wheat. 1–25, 6 L. Ed. 253), and is a trial at common law.

(3) To hold this statute applicable is analogous to the action of the federal courts in giving effect to state statutes of limitation, which are held to bar actions to enforce federal judgments (Ross v. Duval, 13 Pet. 45, 60, 10 L. Ed. 51, and case following this case), and to those holding judgments of federal courts subject to state exemption statutes (see Lanahan v. Sears, 102 U. S. 318, 322, 26 L. Ed. 180). But the difficulty with this argument is that the judgments of the Virginia federal courts in ejectment may be rendered nugatory unless the state court clerks record memoranda of federal pending suits. To construe section 721, Rev. St. [U. S. Comp. St. 1901, p. 581], as adopting the Virginia lis pendens statute, with the admission that the federal courts have no power to require the state court clerks to record such memoranda, is forbidden by the settled course of decision of the federal courts, which enunciates a fundamental principle vital to the continued existence of the jurisdiction of the federal courts in many important respects. See cases cited infra. On consideration of the question of the power of the federal courts in Virginia to compel the state court clerks to record such memoranda, I fail to find satisfactory reasons for holding that they have such power. It may for present purposes be conceded that the issue by the federal court of a writ of mandamus to compel a state court clerk to record such a memorandum would be, not an exercise of original jurisdiction, but of an ancillary jurisdiction, under section 716, Rev. St. [U. S. Comp. St. 1901, p. 580], necessary for the exercise of or necessary to make effective the jurisdiction of the court already obtained. But the federal court cannot by mandamus compel a state official to perform even a clearly ministerial act, involving no exercise of discretion unless the law makes it the duty of such official to perform such act. It is true that the Virginia Legislature enacted the lis pendens statute with knowledge, actual or implied, of the provisions of the thirty-fourth section of the original federal judiciary act. But it does not necessarily follow that the Legislature intended that the lis pendens statute should make it the implied duty of the state court clerks to record memoranda of suits pending in the federal courts. The argument that such intent did not exist is at least as strong as, and to my mind stronger than, the argument that it did

exist. The form and nature of the statute are such that an express provision therein that no suit pending in the federal courts of this state shall affect innocent purchasers, unless a memorandum be re- corded in some state court clerk's office, would have been unbecoming, and an assertion of a power not vested in a state Legislature. Under such circumstances, no rule of construction authorizes us to construe the statute as implying such provision. If there had been enacted contemporaneously with the lis pendens statute an express provision requiring the state court clerks to record memoranda of federal pending suits, a different question would be presented. But as the state law, as it now stands, does not necessarily make it the duty of such officers to record such memoranda, the federal courts have not the power to require them to perform this duty.

In support of the conclusion reached, I have found but one federal decision that seems to be exactly in point. It is Rutherglen v. Wolf, 1 Hughes, 78, Fed. Cas. No. 12,175, in which Judge Bond's reasons for the decision are not given. This case decides that the statute in question does not apply to a suit pending in a federal court in Virginia. Smith v. Gale, 144 U. S. 509, 526, 12 Sup. Ct. 674, 36 L. Ed. 521, does not seem to be in point. Dakota was a territory when the purchase was made. And the application of the Dakota lis pendens statute was not a recognition by a federal court of the power of a state to limit the effect of a federal court judgment. There are many Supreme Court cases enunciating the common-law doctrine that a purchaser pendente lite takes subject to the result of the suit, among which may be mentioned Walden v. Bodley, 9 How. 39, 49, 13 L. Ed. 36; Eyster v. Gaff, 91 U. S. 521, 524, 23 L. Ed. 403; Tilton v. Cofield, 93 U. S. 163, 168, 169, 23 L. Ed. 858; Whiteside v. Haselton, 110 U. S. 296, 301, 4 Sup. Ct. 1, 28 L. Ed. 152; Mellen v. Moline Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178; Thompson v. Baker, 141 U. S. 648, 654, 655, 12 Sup. Ct. 89, 35 L. Ed. 889; Lacassagne v. Chapuis, 144 U. S. 119, 124, 125, 12 Sup. Ct. 659, 36 L. Ed. 368. But in no one of these cases was the question now before us considered.

The true ground for holding that the lis pendens statute does not apply to suits pending in the federal courts is that suggested above, and stated in the numerous federal decisions holding that state statutes requiring judgments to be docketed in the county where the land lies do not affect the judgments of the federal courts in such states. It is that Congress does not intend, when adopting state laws, to adopt such as have the effect of limiting or controlling the jurisdiction and power of the federal courts, when such effect can only be obviated by the voluntary act of state officials over whom the federal courts have no power. If the Virginia Legislature were to enact a statute making it the duty of state court clerks to record memoranda of pending suits and attachments in the federal courts, there might possibly be no further difficulty. But until that is done, the situation in respect to federal pending suits and attachments is the same as that which existed in respect to the lien of federal judgments prior to the congressional statute of 1888 (Act

Aug. 1, 1888, c. 729, 25 Stat. 357 [U. S. Comp. St. 1901, p. 701]) and the Virginia statute of 1890 (Acts 1889–90, p. 22, c. 23).

The reasoning leading to this conclusion, as stated by Judge Hughes in U. S. v. Humphries, 3 Hughes, 201, Fed. Cas. No. 15,-422, is as follows.

"The decisions of the United States courts have been in nothing more uniform, unvarying, and consistent than in holding that, where rights once attach under laws of Congress adopting laws of the respective states, these rights are not divested by a noncompliance with conditions, restrictions, or limitations contained in those very state laws, where a compliance with the latter would depend upon a resort in any way to state officials or to the machinery of the state judiciary. The provision of the Code of Virginia making a judgment for money a lien upon the real estate of the debtor makes, in the eighth section of chapter 182, an exception in favor of a subsequent purchaser without notice, where the judgment has not been docketed. The process of docketing depends upon the action of an officer of a state court in keeping a docket, and upon that officer's actually docketing the judgment of the United States court when presented. There is no law of Virginia requiring this officer to docket the judgment of a United States court. He acts strictly in a ministerial capacity, and is not required by any express law to enter such a judgment when presented for such a purpose. * * * I think it may be laid down as a rule having few exceptions that in any case of a law of a state conferring rights upon conditions or with exceptions, and adopted by Congress as operative in that state, wherever the exceptions or conditions depend upon the action of state officers, so that the enjoyment of rights thus once conferred could be defeated or divested by the action or refusal to act of a state officer, such a condition or exception in the state law is uniformly held by the United States courts not to limit the rights conferred by the act of Congress adopting the state law. This was decided in Palmer v. Allen, 7 Cranch (11 U. S.) 550–564 [3 L. Ed. 436]; Wagram v. Southard, 10 Wheat. (23 U. S.) 1 [6 L. Ed. 253]; U. S. Bank v. Halstead, 10 Wheat. 51 [6 L. Ed. 264]; Boyle v. Zacharie, 6 Pet. (31 U. S.) 648 [8 L. Ed. 532]; and (more particularly in their bearing upon the question now under consideration) Massingill v. Downs, 7 How. (48 U. S.) 760 [12 L. Ed. 903], and Carroll v. Watkins, Fed. Cas. No. 2,457."

See, in this connection, Cooke v. Avery, 147 U. S. 375, 387, 13 Sup. Ct. 340, 345, 37 L. Ed. 209, where it is said:

"Under this legislation [section 721, Rev. St., U. S. Comp. St. 1901, p. 581, inter alia] judgments recovered in the federal courts were undoubtedly liens in all cases where they were such by the laws of the States. * * * But no right in the states to regulate the operation of federal judgments was thereby recognized."

See, also, note to Blair v. Ostrander (Iowa) 80 N. W. 330, 47 L. R. A. 469, 77 Am. St. Rep. 532.

It follows, as there is no power in the federal court to require the state court clerks to record memoranda of federal pending suits, that the lis pendens statute cannot be treated as a rule of decision in the matter now before us.

From what has been said it follows that Flood's petition, in so far as he claims as a pendente lite purchaser under Reese Davis, presents no ground for refusing to allow the judgment against Reese Davis to be executed quoad Flood's rights under his purchase from Davis.

(C) Let us now consider Flood's rights quoad his pendente lite purchase from S. W. McInturf. The judgment of June 23, 1900, against McInturf was set aside by order of December 2, 1902. But the petition of Flood states that Levi Woolford, a defendant against

whom judgment was rendered, and as to whom the return of service of the original notice and declaration is valid, was living on the said McInturf land as the tenant of McInturf at the time the action was instituted. McInturf was not served with the original notice or declaration or with the notice of July 11, 1898. Flood stands in the shoes of McInturf. But whether or not he is bound by the judgment against Levi Woolford, so far as the right of King to execution of the writ of possession as to the McInturf tract is concerned, seems to me to depend on the knowledge or want of knowledge of McInturf of the institution of the action against McInturf's tenant, Woolford. As stated in opinion No. 1, a landlord who is not a party to the action, and does not in the name of his tenant defend the suit, is not bound by the judgment rendered against his tenant, in the sense that the judgment is an estoppel. But if a landlord knows that an action of ejectment has been instituted against his tenant in time to make defense, and does not intervene, I think the writ of possession in favor of the successful plaintiff should be executed against such landlord, or a successor in interest occupying no higher position, and such landlord or successor put to an action to regain possession. In such action, the landlord, not having aided his tenant in the defense of the former action, is not, I think, estopped by the judgment against his tenant. The petition filed by Flood does not assert that McInturf was ignorant of the institution of the action against his tenant, Woolford. In its present form the petition in this respect seems to me insufficient to show reason why the writ of possession should not issue and be executed, quoad Flood's rights as purchaser from McInturf. To allow a landlord, knowing the institution of an action of ejectment against his tenant in time to make defense, who does not defend, to open the judgment, is to permit such landlord to inequitably trifle with the plaintiff's rights. To so rule would allow a landlord, by repeated changes of tenants, to keep the plaintiff bringing actions and recovering fruitless judgments without limit. If in truth McInturf had no knowledge of the institution of the action by King against Woolford in time to defend, I do not at present think of any reason why Flood may not be allowed now to amend his petition in this respect, if he should desire to do so.

(D) Flood's rights as purchaser from H. M. Francis call for very little discussion. Francis was a party defendant to the action, duly served with the original notice and declaration, against whom judgment was rendered in 1900. The authorities cited in opinion No. 1 in regard to the misspelling of the name Francis (14 Ency. Pl. & Pr. 300–1; 1 Black on Judgments [2d Ed.] § 213), to which may be added 1 Freeman on Judgments (4th Ed.) § 50a, seem sufficient for holding that the judgment is valid as to Francis. If so, I do not now think of any reason why it should not be binding on a pendente lite purchaser from Francis. It follows that the petition of Flood, in so far as he claims rights under Brown's purchase in 1899 from H. M. Francis, presents no sufficient reason for refusing to allow the writ of possession to be executed.

(E) We must now consider Flood's rights to the coal, timber,

etc., as the grantee of Brown under the Lohnert patent. It is clear that the compromise between Brown and Davis, Francis and Mc-Inturf, does not deprive Flood of certain rights under his independent title. In any action between King and Flood, the judgment of 1900 would estop Flood from relying on the title derived by Brown pendente lite from Davis, if he was in truth properly served with process, and from Francis and McInturf, but it would not estop him from relying on his own independent title. The question therefore is whether or not Flood's right under the Lohnert grant prevents King from being put into possession of the land, in its entirety, that was claimed by Davis, Francis, and McInturf at the institution of the action. Flood is not now in actual possession of the coal, timber, etc., but I shall discuss the question on the assumption that his position is as strong as if he were in such actual possession.

The question here presented is rather a nice one, because of the fact that Flood has an independent title, and one that has not been adjudicated between him and King. But the decisive point seems to me to be that if Flood is now in possession, or if he should take actual possession prior to the execution of the writ, he obtained or will have obtained such possession as the pendente lite purchaser from Davis, Francis, and McInturf. Does the fact that Flood has an independent claim of title, and that the recognition by Davis, Francis, and McInturf of the strength of this title was the cause for the surrender by them of the coal, etc., sufficiently differentiate this case from one in which the pendente lite purchaser merely pays money to the defendant in possession, and has no title except that of his pendente lite vendor?

Let us now consider some illustrative possible cases:

(1) Suppose A., B., and C. each have an independent claim of title to a tract of land, of which B. is in possession; that A. sues B. in ejectment and recovers judgment. If, pending execution of a writ of possession, B. remaining in possession and defying both A. and C., the latter should petition the court to withhold the writ, open the judgment, and let him (C.) in to defend, I should say that C.'s prayer should be refused. The important question at issue is whether A. or C. has the right to be defendant in the prospective litigation between them. As between them, it seems to me that A. has been the more diligent, and that he is entitled to the fruit of his diligence in successfully suing B. By his judgment A. has acquired a right to the possession as against B. C. has not acquired such right. So far as C. is concerned, B. would rightly remain in possession until C., as plaintiff, sues B. and recovers judgment. The higher position is occupied by A., and he should be put into possession, and C. required to bring his action against A. This conclusion is further fortified by the fact that to hold otherwise would leave B., without right, to continue to hold possession as against A. pending the settlement of the controversy between A. and C.

(2) Now let us take a case—which is the one at bar—where pending suit B. and C. compromise. B. conveys, say, a specified

number of acres of the land to C. in consideration of a release by C. to B. of the remainder, and C. takes possession of his part of, the land. Now C. got possession from B. C. could not, in the case supposed, have obtained possession otherwise than by the act of B. No matter what the consideration, it was B., pendente lite, and not at liberty to act without regard to A.'s rights, who gave to C. the possession. C. had and still has a claim of ownership independent of B.,.but the possession acquired by C. was necessarily derived from B.

(3) Suppose A., B., and C. have each an independent title to a tract of land, and that A. sues B., who is in possession, and recovers judgment against him. If, pending the issue of writ of possession, B., without collusion with C., departs from and leaves the land vacant, and C., finding it vacant, takes possession, I think the weight of authority is that his prayer that the writ be not issued would avail. He would be in possession under an independent claim of ownership. See Mr. Freeman's note to Howard v. Kennedy, 39 Am. Dec. 313; 2 Freeman, Executions (2d Ed.) § 475; Sedgwick & Wait (2d Ed.) § 562. This case differs from the one at bar in this respect: When B. departed and vacated the land, either A. or C. was at liberty to go and take possession. By the vacation of the land by B., A. had secured what he sued for, and his right to take possession has been lost by reason of a want of diligence on his part. Where a defendant pendente lite gives possession to a third party, the plaintiff is not chargeable with any want of diligence. But when a defendant simply retires and leaves the land vacant (always assuming that there is no collusion), the plaintiff can at once take it into his possession. If he does not, and if he loses in the race of diligence with C., he must simply abide the result. In other words, C., having a claim of ownership, has taken peaceable possession of vacant land. B. is an entire stranger to C., and the latter should not be bound by A.'s judgment against such stranger. But in the case at bar Flood has or may get possession by no want of diligence on the part of King. Flood's claim of title under the Lohnert grant remains unadjudicated and unaffected, but Flood's possession has been acquired pendente lite under and by virtue of the possession of Davis, Francis, and McInturf, and this has been adjudged unlawful as against King. If Brown had fought the action of ejectment he brought against Davis, Francis, and McInturf to a conclusion, had obtained judgment, and had thus obtained possession, I think that the writ sought by King should not be executed against Flood. But there is some difference between this supposed case and the case at bar. Under this supposition, Flood would be in possession not under, but in spite of, the former possession of Davis et al. And Flood's vendor, Brown, would have shown himself more diligent in prosecuting his action against Davis et al. than was King in prosecuting his action against them. But when Brown ceased to prosecute his action at Abingdon, and was let into possession, or given leave to go into possession, of the coal, etc., he retired from his race of

diligence with King, and necessarily became, as far as King's rights are concerned, a purchaser pendente lite from the common enemies, Davis et al. As Brown pro tanto surrendered to the parties in possession, and gave to and took from them, Flood's rights ought not to be as high as if Brown had fought out the battle and gained a complete victory.

(F) No discussion of the rights of Davis, Francis, and McInturf under their deeds from Brown seems necessary. They bought and thus secured the Lohnert title before judgment. It was not the fault of the plaintiff that they did not set up and rely on this title in the action.

From what has been said, it follows that the demurrer to Flood's petition would be sustained, except for the fact that the question as to his rights as purchaser under Davis must await the settlement of the truth of the proposed amendment of the return of service of process on Davis.

## (IX) PETITION OF W. M. RITTER.

This petitioner in 1902 purchased a tract of land, embraced within plaintiff's recovery, from Cora McInturf, not a party defendant to King's action. When King's action was instituted, Mrs. McInturf had living on the land as her tenant Levi Woolford, a judgment defendant, as to whom the service of process was validly made. Her tenant gave her no notice of the institution of the action, and she alleges in an affidavit with this petition that she never heard of the action until after the judgment had been rendered. The petitioner is now in possession. It is objected to this petition that Mrs. McInturf denies having heard of an action at Harrisonburg, where the action of King v. Davis et al. was instituted. I do not read her affidavit as thus quibbling. I think she means to state and does state that she was ignorant of the institution or pendency of the action until after judgment. Under this statement, she would herself have a clear right to have the judgment opened, and execution of the writ of possession suspended. And no reason occurs to me why Ritter has not this right as Mrs. McInturf's vendee. He does not allege that he was ignorant that judgment had been rendered against the tenant, Woolford, when he made the purchase, but this seems to me of no import. Mrs. McInturf's right, which she had in 1902, to open the judgment against Woolford, would be of little value if she could not transfer this right to her vendee of the land. Somewhat analogous to this question is the settled principle that an innocent purchaser for value not only gets a good title, but can pass such good title, except back to his vendor, to a noninnocent vendee. And moreover Ritter is not in any sense noninnocent. He had neither the right nor any interest to lead him to defend King's action until after judgment. Being from the date of his purchase quietly in possession, he had a perfect right to remain quiescent until King took steps to disturb his possession. The demurrer to this petition must be overruled.

## (X) Petition of G. L. Blankenship.

Every question here raised has been discussed. This petitioner was a pendente lite purchaser from Cyrus Blankenship. The right to amend the return of service of process as to Cyrus Blankenship is here the same as against Flood, as purchaser from Reese Davis. (VIII, A, ante.) It follows that this petition presents no reason why the writ of possession' should not be executed as to G. L. Blankenship as to the land purchased by him from Cyrus Blankenship; if the amended return of service of process be true in the one point of fact in which it differs from the original return.

## (XI) Petition "A" of Ritter Lumber Company.

### (1) Trees on Waters of Elk Creek.

The first question raised is as to the timber on the three tracts on the waters of Upper Elk creek. The facts alleged are that, prior to the institution of the action, Elijah Dotson (David and Ransom Dotson joining) conveyed a number of standing trees, with rights of entry, etc., to Sibley. By a series of conveyances, no one of the successive owners being a party to this action, made after the institution of the action, the title to these trees was vested in the petitioner. After the conveyance of the trees to Sibley, Elijah Dotson made conveyances of parts of the land on which the trees stand, excepting the trees from such conveyances, to John Dotson, Jane Mounts, Marinda Hurley (formerly the wife of Robert Hurley), and to David, Ransom, and Bazil Dotson. Leaving any other question out of view, it may be considered that King is now entitled to have his writ of possession issued and executed as against Bazil, David, and Ransom Dotson. The petitioner prays that no such writ issue, or, if it do issue, that the rights of petitioner be guarded. The petitioner claims by title arising ante litem. It is not alleged that the petitioner is now in possession of these trees, and, considering the economic and practical objections to felling trees in advance of means of transportation to market, I assume that the petitioner does not now intend to take such actual possession if its present position can be saved to it. By judicial decision in this state, standing trees are considered real estate. Stuart v. Pennis, 91 Va. 688, 22 S. E. 509. After a landowner makes a conveyance of standing trees and rights of entry, etc., retaining himself the remaining interest in the land, it seems to me that the grantor cannot be considered as in either actual or constructive possession of the trees. Nor can the grantee of the trees be considered as in either actual or constructive possession until at least he is actually engaged in the work of felling the trees. I should here say that I use the term "constructive possession" as necessarily implying a partial actual possession. For a discussion of the propriety of thus using the term, and for differentiating between constructive possession and mere seisin in law, or right to possession, see 3 Va. Law Reg. 765.

If the petitioner were in possession, or if it were to take possession of the trees prior to the execution of the writ of possession,

there would be no difficulty. The marshal will not, and will be instructed not to, eject the petitioner if found in possession of the trees. Being in possession by title arising ante litem, there is no question in my mind as to the propriety of such instruction to the marshal. To prevent possible wrong to the plaintiff, and in the interest of peace, my present idea is that the agents and employés by whom petitioner takes possession of the trees, if it does take such possession, must not be any of the judgment defendants. In other words, the instructions to the marshal should direct that the judgment defendants are to be put off of the land, even if they be then engaged as servants of the lumber company in felling these trees. But as the petitioner is not in and may not take possession, the question is as to the right of this court in this proceeding to grant the prayer of the petition or to give any relief. What rights, if any, petitioner may have in equity, and what it may accomplish now or hereafter by some independent action at law, are questions not now presented for discussion. But in this proceeding this court, as I think, is without the power to grant any relief to petitioner.

(1) There is surely no reason shown why the plaintiff should not have his writ, and have the judgment defendants ousted, simply because a claimant to these trees (analogous to vacant land) has a title originating ante litem.

(2) The attempt to have put into the writ of possession a proviso to the effect that petitioner's rights shall not be affected is forbidden by several considerations:

(a) So to do is in effect to vacate pro tanto the judgment of a former term. It is true, the court, when rendering that judgment, had no jurisdiction of the owner of the trees. The trees were not "actually occupied" by any one in 1896, and Sibley, the then claimant, was not made a defendant. Acts 1895–96, p. 514, c. 497. But this want of jurisdiction does not appear on the record made up to the time of judgment.

(b) It is an established rule that writs of possession must follow the judgment. 2 Freeman, Executions (2d Ed.) § 471; Roscoe, Real Actions, 609; Sedgwick & Wait (2d Ed.) § 550; Va. Code 1887, § 3584 [Va. Code 1904, p. 1914].

(c) In reality what the petitioner seems to be asking of this court is tantamount to the issue of an injunction. In effect, petitioner asks, if King be put into possession of the land on which these trees stand, that he be enjoined from taking possession of the trees or from treating himself as in possession.

So far as this branch of the petition is concerned, I think the demurrer is well taken.

(2) Trees on and Right of Way over the 169-Acre Tract on Knox Creek.

The facts as stated are that prior to the action one John B. Justus conveyed these trees to petitioner's remote grantor. No one of the successive owners of these trees is a party to the action. Also prior to the action Justus conveyed the remaining interest in the land to the judgment defendant, Cyrus Blankenship. After the ac-

tion was instituted, Cyrus Blankenship conveyed his interest in the land to G. L. Blankenship, who granted a right of way over the 169 acres for the purpose of carrying timber cut from other lands over and across the tract in question. This right of way has been granted to petitioner, and it is now using it; having a tramway constructed across the 169-acre tract, over which timber from other tracts is being carried. No new question is here presented. In so far as petitioner's use and occupancy of the right of way is concerned, the petitioner has title under a pendente lite purchaser, and, subject to ascertainment of the truth of the proposed amended return as to Cyrus Blankenship, is bound by the judgment. It is true that it is laid down that ejectment does not lie for an easement or other incorporeal hereditament. But if so, this is no reason why an actual occupancy and use of the soil secured pendente lite from a judgment defendant should be permitted as against the successful plaintiff. While it may be that the marshal cannot deliver possession of an easement (and I do not commit myself unreservedly as to this doctrine), I see no reason why he cannot eject and oust from a tract of land the people who are unlawfully using such easement, and who have to be on the land in order to use it.

The question as to the trees on this tract does not differ from that discussed above. Mere use of a right of way across the tract on which the trees stand in transporting timber from other tracts is not, to my mind, possession of the standing trees on this tract. In view of the fact that petitioner may take an actual possession of these trees, and be in such possession when the marshal arrives to execute the writ of possession, it will be proper to instruct him not to oust petitioner in such event, as petitioner's title to these trees is in no way affected by the judgment. In this connection, it is not improper for me to express my present opinion that even in such event the petitioner will not have a right, after execution of the writ as to the landowner, to continue to transport timber from other lands across this tract.

So far as this branch of the petition is concerned, the demurrer seems well taken.

### (3) Trees on the 1,235-Acre Sibley Tract.

Sibley, not a party to the action, claiming this tract, conveyed these trees to petitioner in 1899. The land here is the same of which Archibald Justus, a judgment defendant, as tenant of Sibley, was in possession at the time the action was brought. Sibley's rights have been discussed. Inasmuch as the writ of possession against Archibald Justus will not be executed as to this tract, and as Sibley's present tenant will be left in undisturbed possession, it does not seem necessary now to take any action as to this branch of the petition, unless it be proper to now let the petitioner in along with Sibley to defend the action. Petitioner is not in possession of these trees. I do not believe that this law court can, on the motion of a mere claimant of real estate (petitioner), who is himself out of possession, require that an adverse claimant (King),

also out of possession, be the plaintiff in ejectment. To allow petitioner to defend the present action is in effect to force King to assume the position of plaintiff as to one not in possession. While King may, if he so desires, bring ejectment for unoccupied land against a mere adverse claimant (Code 1904, p. 1404, § 2726), I do not understand that he can be required so to do by the law court. It may be argued that if petitioner, being so situated that it could take actual possession of the trees without let or hindrance from King, were to file a bill in equity for the purpose, King would be temporarily restrained from cutting the trees, and would be required, as plaintiff in ejectment on the law side, to litigate with petitioner the title to the trees. But assuming the soundness of all this, and without expressing an opinion thereon, the power of the equity court, if it exists, to require King to sue petitioner in ejectment, is strictly an equitable power, which arises as incidental to petitioner's right to an injunction pending the result of such litigation. If the argument above suggested be sound, it is distressingly technical that the petitioner must be turned away from the law court, and required to obtain from the equity side of the court such an order as is above mentioned, merely to get back into the law court. But such seems to be the inevitable result of the want of power of the law court, and of the rigid separation of the equity and law jurisdictions of this court required by the rulings of the Supreme Court. So far as this branch of the petition goes, the demurrer is well taken.

What has just above been said applies also as to the trees standing on the land claimed by Robert Hurley, and the tracts claimed by John Dotson and Jane Mounts.

(XII) PETITION "B" OF RITTER LUMBER COMPANY.

The facts here set out are that Reese Davis, a judgment defendant, on October 24, 1901, after judgment conveyed the surface of a tract of 100 acres to one Riley Lester, who in 1904 conveyed said interest in said land to petitioner; that petitioner is now in actual possession thereof; that the lumber company was not in existence until after the judgment of 1900 was rendered; and that Riley Lester did not have any knowledge or notice of said judgment "until long after it was rendered."

I have not given the question full consideration, but let it be assumed for present purposes that since January 24, 1890, a judgment of a federal court in this state which is not docketed in the county where the land lies is not notice to and does not bind an innocent purchaser who acquires title for value after such judgment is rendered. See Act Aug. 1, 1888, c. 729, 25 Stat. 357 [U. S. Comp. St. 1901, p. 701]; Acts Va. 1889-90, p. 22, c. 23. If this be sound, it rests on the theory that a judgment in ejectment, as well as one for money, falls under section 3570 of the Code [Va. Code 1904, p. 1906], and also on the theory that, when judgment has been rendered, although it may not yet have been carried into execution, the action is no longer pending, in the sense that it imports notice to all persons dealing with the parties to the action.

There may be room for discussion as to both these questions, but this petition is not so framed as to raise such questions. There is no sufficient allegation as to Lester's innocence of knowledge at the time when he purchased. "Long after" is entirely too indefinite and ambiguous. The judgment was rendered in June, 1900. Lester purchased in October, 1901. Whether or not he was a bona fide purchaser for value does not appear, nor does it appear when he became a complete purchaser. I may say here that my present opinion is that want of knowledge of the judgment on the part of petitioner need not be alleged, in so far as the questions above suggested are concerned. Where an innocent purchaser for value gets good title, he can pass equally good title, ordinarily, to a noninnocent vendee.

The question as to the right of plaintiff to amend the return of service of process as to Reese Davis need not be here discussed. If petitioner is bound by the judgment, the right to amend seems to me to exist as in Flood's case. If petitioner is not bound by the judgment, the amendment will not affect it.

Subject to an ascertainment of the truth of the proposed amendment as to Reese Davis, the demurrer to this petition will have to be sustained.

If, acting without delay, counsel desire to file an amended petition, I think, perhaps, this should be allowed. But therewith should be filed certified copies of the deed from Davis to Lester, and of the deed from Lester to petitioner. If for no other reason, a description of the tract should be furnished, so that, if petitioner should be held to have a right to have its possession of the surface of this tract left undisturbed, the boundaries of the tract can be specified.

(XIII) The Motion to Amend Return of Service of the Notice of July 11, 1898.

This notice was to the effect that plaintiff would on a day named ask leave to amend his declaration, "giving more specific description of the premises declared for." The return of service made is imperfect as to some of the defendants, and plaintiff moves to be allowed to amend the return. I understand that the defendants resist this motion, and I think that the motion should be overruled. The right to amend the declaration existed, if at all, without giving any notice whatsoever of intent to ask leave to amend. If no such right existed, the giving of the notice did not give the court jurisdiction to render judgment in accordance with the amended declaration. Hence it is, at least on this side of the court, entirely immaterial whether such notice was given or not.

It may be that some of plaintiff's opponents will seek relief in equity, and that plaintiff is of opinion that in such event his position will be stronger if he is here allowed to amend, and show that this notice was validly served on all the judgment defendants. But even if so, and aside from the fact that such evidence can be as well given in such equity proceeding as here, I do not perceive any reason why this court should stay its proceedings

and enter upon an inquiry which can have no possible bearing upon the questions presented in this court. If plaintiff is entitled to execution of the judgment as to any one, such right exists independent of the fact that said notice was or was not served. If any of plaintiff's opponents is entitled to any relief in this court, he is likewise entitled thereto without reference to the service or nonservice of such notice.

### (XIV) Issues of Fact as to Proposed Amendment of Original Return.

A question of some interest will arise if any defendant or other interested person desires to contest the truth of the proposed amended return of service of the original notice and declaration. Inasmuch as no one has a right to deny the truth of the original return on the law side of this court, I think the issues of fact should be as clearly defined as possible, and no evidence admitted except such as tends to prove or disprove some fact wherein the amended return differs from the original. Reese Davis and persons claiming under him, for instance, should, I think, be confined to evidence tending to show that Davis' wife was not a member of his family on June 4, 1896.

The motion of plaintiff to be allowed to amend, accompanied by the verified amended return, is, I think, a sufficient pleading to tender the issues of fact as to the truth or untruth of the proposed amended return. The defendants Cyrus Blankenship and Reese Davis, and persons in interest claiming under them, should be allowed to file, if they so desire, jointly or severally, traverses of the truth of the proposed amendment, within the limits above pointed out. The order to be made should fix a reasonable time within which such defensive pleadings must be filed. If no such defensive pleadings are filed within the time fixed, an order should be made allowing the amendment of the return.

### (XV) Issues of Fact as to Petitions.

As to those petitions as to which demurrers are not now to be sustained, the plaintiff should be given an opportunity, if desired, to contest any of the essential facts stated. The order should give him a reasonable time within which to file traverses (perhaps best after the form of answers in chancery) to such petitions.